## Jackson *et al. versus* Clymer, for use, &c.

43
41SC 1551
79

*Set-off must be between same Parties claiming under same Rights.*

1. Damages for the breach of a partnership contract cannot be set off against the demand of one of the partners in a suit founded on his individual contract.

2. A firm to secure creditors agreed to transfer certain coal-barges, mules, &c., to them, and executed a bill of sale, the creditors at the same time agreeing to take the real estate of one of the firm and pay the liens thereon, which were for his individual debts: deeds for the property were made, but the creditors did not pay the liens, and in an action in the name of the individual partner against the creditors on their agreement to take his property and pay the liens, the defendants claimed that it and the bill of sale were one transaction, and that they were entitled to defalk, against the amount to be recovered against them, damages for breach of the partnership contract in not turning over to them the property sold, to which they covenanted that they had good title. *Held*, that the defence was not valid, its effect being to divert to the creditors of the partnership a fund arising from private property specifically appropriated to private debts.

ERROR to the Common Pleas of *Berks county*.

This was an action of covenant, brought November 5th 1859, by Daniel R. Clymer, for the use of William Strong in trust for Elizabeth Norton, and for the use of Dr. Charles H. Hunter, in trust; against Thomas Jackson, Samuel Frees, John Kissinger, Thomas McCombs, Daniel Miller, Daniel Housum, Charles D. Geiger, Henry B. Boyer, Thomas Rambo, Peter D. Getz, John Fehr, and Michael Nunemacher.

The plaintiff declared, on an agreement under seal made between him and the defendants, dated January 21st 1858, by which the plaintiffs covenanted to sell and convey to the defendants certain real estate in the city of Reading; in consideration of which the defendants agreed to pay certain liens thereon. Deeds were made, and the defendants took possession of the property, but soon afterwards abandoned the same, and it was sold by the sheriff on the liens. All the liens were paid except the last but one, on which a balance of about $2200 remained, and the last one, which was a judgment for $1819, given on the day the agreement was made, to Charles H. Hunter in trust for certain creditors of the plaintiffs.

The plaintiff, Daniel R. Clymer, and one William H. Norton, had been engaged in the boating business under the firm of Norton & Clymer. For the accommodation of the firm, the several defendants had endorsed their paper to a large amount. The firm becoming embarrassed, they called a meeting of the endorsers, and, after some negotiation, agreed to transfer to the defendants thirteen coal barges with the furniture, a frame stable erected on ground belonging to another, thirty-five mules, and a lot of harness. The consideration expressed in the bill of sale was $18,155, that being the estimated value of the property

[Jackson *et al. v.* Clymer.]

transferred; but no money was paid, the object of the sale being to indemnify the defendants for their endorsements. A bill of sale was made, dated January 20th 1858, signed by William H. Norton and Daniel R. Clymer, setting forth the property sold with a covenant therein in these words:—

"That we, the said William H. Norton and Daniel R. Clymer, at the time of the sealing and delivery hereof (notwithstanding any act or thing done by us to the contrary), are the true and lawful owners and proprietors of the said boats and barges and premises hereby granted with the appurtenances, and have full power and lawful authority (notwithstanding such act or thing as aforesaid) to grant and convey the said boats, barges, and premises hereby mentioned to be granted, with the appurtenances, unto the said Daniel Housum and others, their executors, administrators, and assigns, in manner and form as aforesaid."

Clymer refused to join in the bill of sale except on condition that the defendants would agree to take certain houses which he owned in the city of Reading, and pay all the liens upon them, including a new judgment to be given by him to secure his private debts to his relatives, friends, and others. The endorsers, apprehending that they would otherwise get nothing, consented to these terms, and entered into the agreement upon which this suit was brought; whereupon Norton & Clymer executed the bill of sale of the boats, &c. Both papers were signed at the same time.

Three of the boats were at the time in the vicinity of the city of New York. The defendants immediately attempted to take possession of them, but discovered that on the 20th day of January 1858, they had been seized on a foreign attachment, issued by the Camden & Amboy Railroad and Transportation Co., and the Delaware & Raritan Canal Co., for tolls and towage due from Norton & Clymer. The boats were afterwards sold by the sheriff of King's county, New York, for $1150. The value set upon these three boats by Norton & Clymer, at the time of the transfer of them to the defendants, and the price at which they were accepted, was $3900. Two other of the boats were subject to liens held by the trustees of the Schuylkill Navigation Co., amounting to $737.27 and $44.80. The stable was subject to a lien for ground rent of $50. The defendants, averring that the bill of sale and the agreement with Clymer were all part of one transaction, claimed to defalk from any damages that might be recoverable in this suit, the loss which they had sustained from failure of the consideration of the agreement, on which the suit was founded.

The court (Woodward, P. J.,) charged the jury that this could not be done; that the effect of permitting the defence to prevail "would be to divert to the creditors of the partnership a fund

[Jackson *et al. v.* Clymer.]

arising from private property specifically appropriated to the payment of private debts," and that "if the evidence in the case was credited by the jury, the plaintiff was entitled to a verdict."

There was a verdict and judgment entered for the plaintiff in the sum of $2261.10.

The defendants thereupon sued out this writ, and presented here the following assignment of errors: viz.

1. The court erred in charging the jury as follows: "Assuming all the allegations of the defendants, under the evidence they have given, to be true, the court do not regard them as establishing a valid defence. The effect of permitting it to prevail, would be to divert to the creditors of the partnership a fund arising from private property specifically appropriated to the payment of private debts."

2. The court erred in further charging the jury as follows: "The other evidence in the case is uncontradicted, and is submitted to the jury. If it is credited by them, the plaintiff is entitled to a verdict."

*John S. Richards, C. K. Robeson,* and *John Banks,* for plaintiffs in error, argued that the defence was improperly rejected, that a portion of the consideration of the agreement on which this suit is brought, and the moving cause which induced the defendants to enter into it, was the transfer of the thirteen barges, of which immediate possession was to be given, but of which the defendants received but ten.

The three papers were executed at the same time, and were parts of one transaction. The same consideration entered into all of them, and the delivery of these boats to the defendants was a material part of the consideration: Makepeace *v.* Harvard College, 13 Pick. 301.

That the true consideration of a deed may be proved by parol, is held in Jack *v.* Dougherty, 3 Watts 156, citing the words of Justice Parker in Bullard *v.* Briggs, 7 Pick. 533.

When the cause of action which the defendant wishes to set off arises out of the same transaction as that on which the plaintiff founds his action, the whole controversy may be settled by the same jury: Stiegelman *v.* Jeffries, 1 S. & R. 487; Gogel *v.* Jacoby, 5 Id. 122; Morgan *v.* The Bank of North America, 8 Id. 73; Shaw *v.* Badger, 12 Id. 275; Philips *v.* Lawrence, 6 W. & S. 150, 155; Patterson *v.* Hulings, 10 Barr 507; Falconer *v.* Smith, 6 Harris 132; Strawbridge *v.* Cartledge, 7 W. & S. 399. The damage we sustained from the failure of consideration is a good defence to this action *pro tanto.* If not allowed, the defendants will suffer the greatest injustice, and will have no remedy.

*B. Frank Boyer, J. D. Davis, Charles Davis,* and *H. W.*

[Jackson *et al. v.* Clymer.]

*Smith,* for defendants in error, contended that the ruling of the court below was proper; that the defendants had, by this arrangement, secured a preference over other partnership creditors; that the parties to the two agreements were not the same, nor did the parties ever consider the two agreements as one contract; that in Jack *v.* Dougherty, 3 Watts 156, the evidence was admitted to rebut the presumption of fraud arising from the apparent consideration in the deed, while evidence of defendants in this case was all admitted, but failed in making out any other consideration than that mentioned in the real estate contract, the agreement sued on—that is, the defendants to pay the liens on the property and plaintiff to make a deed to them.

The authorities from 1st, 5th, 8th, and 12th S. & R. are not in point; the defence offered in those cases by way of set-off, was between the same parties. Here defendants are sued by D. R. Clymer for the use of his separate creditors and the offer was to set off a claim for damages against the firm of Norton & Clymer.

The cases cited from 10 Barr 507, as to failure of consideration in whole or part, and from 6 Harris 132, as to matters of defence immediately connected with the transaction sued on, and impeaching the consideration of the contract, were cases of a failure of consideration by the party suing, and not another and distinct party, as in this case.

This contest is between some of the partnership-creditors of Norton & Clymer and the individual creditors of Daniel R. Clymer. Upon the failure of the firm of Norton & Clymer, the defendants, joint creditors by endorsement, who were in danger of losing the whole amount for which they were liable, through executions issued by other firm creditors who might get judgment before them, endeavoured to procure a preference for themselves over other firm creditors; and from the conferences which ensued resulted the two agreements in the case; which prove that the partnership property was appropriated to the payment of the meritorious firm claims of the defendants, as endorsers, and the private property of Daniel R. Clymer to the payment of the equally meritorious private debts of said Clymer, defendants agreeing to buy the property at the price of the liens upon it.

Such appropriation is in accordance with the rule in equity, as to joint and separate creditors of a firm : Walker *v.* Eyth, 1 Casey 216.

The offer of the defendants below amounts to an attempt to set off damages alleged to be due by Norton & Clymer to them on the boat contract, against the claim of the separate creditors of D. R. Clymer, on the real estate contract. That this cannot be done is expressly decided in the case of Walker *v.* Eyth, cited

[Jackson *et al. v.* Clymer.]

above. See also Milliken & Co. *v.* Gardner, 1 Wright 456; 2 Par. on Cont. 14, 15.

The two agreements in this case are not one contract, for they are between different parties, and relate to different subjects. See Carmel *v.* Todd, 3 Denio 130.

The opinion of the court was delivered, May 29th 1862, by

LOWRIE, C. J.—It is very plain that the defendants have been sadly disappointed by the result of this transaction, and therefore we have been very earnest to find relief for them in the form of defence here presented; but we are unable to take any other view of the case than that taken by the learned President of the Common Pleas. Though there is a partial unity in the transaction, yet there is also a formal and substantial duplicity: one part relating to partnership debts, and the other to the private debts of one of the partners. The one compromise, therefore, resulted in two agreements for partnership and for private creditors respectively. Each is held in different rights; and hence the right of legal set-off and defalcation is limited, so that the disappointment of one cannot be set off against the other or defalked from it as a matter of law. But this would not hinder an equitable defalcation, if there were not other considerations that would prevent it. It is prevented *in this form,* because to allow it would be to take the property of the private creditors and appropriate it to those of the partnership. If the parties to the arrangement were alone to be affected by the defalcation, we might possibly work it out. And possibly a bill in equity to rescind this part of the arrangement might have had some value, but we are not sure. We cannot find any way of sustaining this defence.

Judgment affirmed.