938 A.2d 274

OZ GAS, LTD.

v.

WARREN AREA SCHOOL DISTRICT, Warren County,
Triumph Township, Deerfield Township, Forest
County, and Forest Area School District.

Appeals of: Forest Area School District (No. 10 Wap 2006);
Warren Area School District, Warren County and Deerfield
Township (No. 11 WAP 2006); and Triumph Township (No. 12
WAP 2006).

Supreme Court of Pennsylvania.

Argued March 5, 2007.

Decided Dec. 27, 2007.

William R. Strong, Esq., Clarion, for Forest Area School District.

Joseph E. Altomare, Esq., Oz Gas, Ltd.

Mark Edwin Mioduszewski, Esq., Knox, McLaughlin, Gornall & Sennett, P.C., for Warren Area School District.

Mark Edwin Mioduszewski, Esq., Warren Area School District, Warren County and Deerfield Township.

Rene Heilman Johnson, Esq., Swanson, Bevevino & Gilford, P.C., Tionesta, for Triumph Township.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice CASTILLE.

This appeal presents questions regarding the effect of this Court's decision in *Independent Oil and Gas Association v. Board of Assessment Appeals of Fayette County,* 572 Pa. 240, 814 A.2d 180 (2002) (*"IOGA"*). *IOGA* held that Section 201(a) of the General County Assessment Law, 72 P.S. § 5020–201(a), precludes counties from collecting taxes on oil and gas reserves that remain in the ground. The specific issues are whether *IOGA* should apply retroactively and whether Section 5566b of the Local Tax Collection Law, 72 P.S. § 5511.1 *et seq.,* governing refunds of taxes paid where the taxing authority was not legally entitled to the payment, applies automatically in light of that decision. The Commonwealth Court addressed only the issue of the automatic application of Section 5566b and held that the language of the statute clearly and unambiguously commands that, if a taxpayer files a written claim for a tax refund within three years of payment of the tax to a political subdivision that was not entitled to collect the tax, the taxpayer is entitled to a refund. For the reasons that follow, we reverse.

From 1999 through 2002, appellee Oz Gas paid *ad valorem* taxes on its oil and gas interests to Warren Area School District, Warren County, Triumph Township, Deerfield Township, Forest County and Forest Area School District ("Taxing Authorities") pursuant to Section 201(a) of the Assessment Law. On December 19, 2002, this Court issued the *IOGA* decision finding that counties are not authorized to tax oil and gas interests. Consequently, on May 13, 2003, Oz Gas filed a complaint in the Court of Common Pleas of Warren County, seeking a refund for the previous three years of taxes it had paid, invoking the refund provision of Section 5566b.[1]

1. Shortly thereafter, on July 9, 2003, the County Commissioners Association of Pennsylvania filed a petition to intervene, which was subsequently withdrawn on September 29, 2003. In addition, on August 11, 2003, Centre, Clinton, Forest and Jefferson Counties petitioned to

The Taxing Authorities filed motions for summary judgment, arguing that Section 5566b permits the recovery of only those taxes paid during the previous three years to which the taxing authority had no legal entitlement. Prior to this Court's decision in *IOGA*, the Taxing Authorities argued, they were legally entitled to collect the taxes in dispute. Therefore, the Taxing Authorities contended, Section 5566b did not authorize a refund in this instance. They further argued that *IOGA* announced a new principle of law, and as such, the decision should not be applied retroactively to change the legality of tax assessments made prior to the decision. Oz Gas filed a cross-motion for summary judgment, arguing that *IOGA* should apply retroactively because it was applied retroactively to the plaintiffs in that case and this Court did not expressly state that its application was prospective only. Further, Oz Gas claimed, *IOGA* did not represent such a change in the law that prospective-only application of the decision was warranted.

The trial court granted the Taxing Authorities' motions for summary judgment. The court first considered whether Section 5566b automatically commanded retroactive application of *IOGA*. Section 5556b provides as follows:

(a) Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby

intervene. On October 10, 2003, the trial court denied the petitions of Centre, Clinton and Jefferson Counties, but granted Forest County's petition. On November 12, 2003, Forest Area School District filed a petition to intervene, which was granted with the consent of all parties. On February 24, 2004, Forest County sought to withdraw as intervenor, which the trial court accepted with the consent of all parties. Thus, the defendants remaining in the trial court were Warren Area School District, Warren County, Triumph County and Deerfield Township as defendants and Forest Area School District as intervenor.

directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.

(b) The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise, for recovery of moneys paid as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous.

(c)(1) * * * *

(2) For purposes of this subsection, the term "political subdivision" means a county, city, borough, incorporated town, township, home rule municipality, school district, vocational school district and county institution district.

72 P.S. § 5566b. The court found that the language of the statute did not require retroactive application. The court based its conclusion in this regard on this Court's decision in another case involving the retroactivity of a decision holding a tax invalid, *American Trucking Associations, Inc. v. McNulty*, 528 Pa. 212, 596 A.2d 784 (1991). *McNulty* was before this Court on remand from the U.S. Supreme Court, which had determined in a prior case that certain fees or taxes imposed by Pennsylvania on interstate truckers were unconstitutional as a violation of the Commerce Clause. The matter was remanded to determine whether the High Court's ruling should be applied retroactively. The *McNulty* Court held that the constitutional ruling applied only from the date of the decision forward because the tax was not unconstitutional until the U.S. Supreme Court so declared.

The trial court noted that Section 5556b contemplates retroactivity, but rejected Oz Gas's argument that the refund provision requires retroactive application of a case decision any time a statute or ordinance is held to be unconstitutional or its existing interpretation is found to be erroneous. The court found that subsection (b) merely provides an avenue of appeal in instances where the right to a refund is not based upon a finding that the tax statute is invalid, stating that subsection (b) plainly means: "a taxpayer is not required to pursue alternate refund remedies if the refund is claimed pursuant to a provision of a tax statute subsequently held by a court to be erroneous." Trial Ct. Op. at 7. Looking to this Court's decision in *McNulty*, the court further noted that, even though the refund statute at issue in that case was worded differently than Section 5556b, the same analysis pertained because both *McNulty* and the matter *sub judice* involve the question of a governmental entity's entitlement to taxes:

> Applying *McNulty* to the instant case, it is clear that this Court's decision cannot be based upon a strict analysis of the statutory wording in a vacuum. Instead, the Court must determine whether or not the [*IOGA*] decision is retroactive or prospective. If, in this Court's determination, the [*IOGA*] decision is retroactive, then Section 5556b(a) would apply and the tax would have been one to which the municipalities were "not legally entitled." However, if this Court determines that the [*IOGA*] decision is not to be applied retroactively but is only prospective, then the municipalities were, at the time of collection, legally entitled to the taxes which they collected from [Oz Gas] for oil, gas and mineral interests and [Oz Gas] has no valid claim for a refund under Section 5556b(a).

*Id.* at 6.

The court then turned to the retroactivity of *IOGA* independent of Section 5556b. On this question, the court applied the three-prong test for determining retroactivity as a jurisprudential matter, as set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296

(1971). The *Chevron* analysis looks to: (1) whether the decision established a new principle of law; (2) a balancing of the merits by looking at the history of the rule in question, its purpose and effect, and whether retroactive application will further or retard its operation; and (3) an evaluation of the equities involved. As to the first factor, the trial court concluded that *IOGA* did announce a new principle of law because this Court "decided an issue of first impression whose resolution was not clearly foreshadowed." Tr. Ct. Op. at 9 (citing *Chevron*, 404 U.S. at 106, 92 S.Ct. 349). The trial courts conclusion that *IOGA* was not foreshadowed was based upon *F.H. Rockwell Co. v. Warren County*, 228 Pa. 430, 77 A. 665 (1910), where this Court held that oil and gas interests underlying unseated lands were taxable as real estate and were actually defined as real estate.[2] The trial court noted that, since *Rockwell*, "local governments have been taxing oil and gas interests for decades," and several cases since *Rockwell* identified oil, gas and minerals as "real estate and taxable." Thus, according to the trial court, the decision in *IOGA* represented a departure from decades of taxation of oil and gas interests, upon which taxing authorities had relied. *Id.*

Regarding the second *Chevron* factor, the trial court stated that the purpose of the taxing statute is straightforward—to allow political subdivisions to collect taxes on real estate. The overall effect of *IOGA*, in the courts view, was to grant the plaintiff in that case equitable and declaratory relief which, by its nature, is forward looking. In addition, the court noted that retroactive application would deprive political subdivisions of revenues already disbursed for the needs of the local governments and would, therefore, thwart the purpose of the statute. Finally, in the courts view, the third factor, the equities, weighed heavily in favor of prospective application of *IOGA* because for nearly 100 years property owners had paid *ad valorem* taxes on oil and gas interests, and tax sales had resulted from non-payment of those taxes. Retroactive appli-

---

**2.** "Unseated land" is land that is not listed on the tax rolls by a specific owner. In *Rockwell*, the Court held that if one party owns the land and another owns the subsurface oil and gas interest on these unseated lands, both interests are taxable as real estate.

cation of *IOGA* would, in effect, invalidate each of those tax sales, perhaps leading prior owners to seek return of the properties lost to those tax sales. The court also recognized the burden on the Taxing Authorities of having to refund taxes paid for the three years prior to *IOGA*, which could prove financially devastating to small rural governments that have depended on the taxation of oil and gas interests. Thus, the trial court ultimately found that: "based on a careful analysis of the *Chevron* factors, this Court concludes that all three prongs are satisfied and that the [*IOGA*] decision should be applied prospectively only." Tr. Ct. Op. at 12.

Oz Gas appealed to the Commonwealth Court, which reversed in a brief, published *en banc* opinion authored by the Honorable Rochelle S. Friedman. The Honorable Renee Cohn Jubelirer dissented without opinion. The majority determined that the language of Section 5566b is clear and unambiguous and plainly provides for a refund of taxes to which the taxing authority was not legally entitled, a determination that may result from a subsequent decision of a court. *Oz Gas, Ltd. v. Warren Area Sch. Dist.*, 886 A.2d 336 (Pa. Cmwlth.2005).³ Given its finding that the refund statute alone was dispositive, the Commonwealth Court did not address Oz Gas's alternative argument in favor of retroactivity pursuant to *Chevron*.

This Court granted further review. Appellant Forest Area School District ("Forest") has filed a brief in this Court, and

---

3.  The majority's reasoning reads, in its entirety, as follows:

    The language of [Section 5566b] is clear and unambiguous. A taxpayer who files a written claim for a tax refund within three years of payment of a tax is entitled to a tax refund if the political subdivision was not legally entitled to collect the tax. 72 P.S. § 5566b(a). Moreover, the taxpayer may seek the tax refund under the Refund Law where the taxpayer's claim is to recover taxes paid under a statutory interpretation of a taxing provision which a court subsequently held to be erroneous. 72 P.S. § 5566b(b). Here, Oz paid taxes to the taxing authorities from 1999 through 2002 under an interpretation of section 201(a) of the Assessment Law which our supreme court subsequently held was erroneous. [*IOGA*] Thus, Oz has a right to a tax refund for the taxes it paid under section 201(a) of the Assessment Law for the three years prior to the filing of its claim.

    *Oz Gas*, 886 A.2d at 338.

appellants Warren Area School District, Warren County and Deerfield Township (collectively "Warren") have filed a single, joint brief.[1] Regarding the issue of Section 5566b's scope, Forest argues that Section 5566b does not automatically entitle Oz Gas to a refund because the clear intent of the statute is to provide a refund only when the political subdivision is "not legally entitled" to the tax, a term that is not defined in the statute. According to Forest, the Commonwealth Court erred by finding that the requirement that the taxing authority is not legally entitled to the tax pursuant to Section 5566b(a) is met when, consistent with Section 5566b(b), the tax statute is subsequently found to be invalid by a court of competent jurisdiction. This intermingling of the subsections is, Forest claims, contrary to Section 1903(b) of the Statutory Construction Act, 1 Pa.C.S. § 1903(b), which provides that: "General words shall be construed to take their meanings and be restricted by preceding particular words." Forest contends that subsection (b) deals with alternative refund remedies unless the tax provision is held to be invalid, and that there is no indication in the statute that the alternative remedy provision is intended to define the term "not legally entitled" as used in subsection (a).

Forest further argues that the Commonwealth Courts interpretation of Section 5566b is in conflict with *McNulty*, where this Court held that a tax refund statute by itself did not resolve the question of whether a decision like *IOGA*, disapproving a tax, should apply retroactively. Instead, Forest submits, the court must look to judicial precedent to determine the issue of retroactivity as the question of retroactivity in this instance is a judicial question, not a legislative one, which must be resolved by applying the *Chevron Oil* test.

For its part, Warren adds that Section 5566b is a procedural statute establishing a mechanism for a taxpayer to seek a refund of taxes to which the taxing authority was not legally

4. Neither Warren County nor Deerfield Township filed petitions for allowance of appeal; nevertheless, they have joined in Warren Area School District's brief. Appellant Triumph Township filed a petition for allowance of appeal but did not file a brief in this appeal.

entitled, but it does not confer any self-effectuating, substantive right to a refund. Warren notes (as Forest does) that at common law there was no right to a refund even if taxes were mistakenly paid or wrongly assessed. Section 5566b, therefore, is significant in that it altered the common law by providing a mechanism for refund. Thus, according to Warren, *Oz Gas* is entitled to a refund only of any taxes paid after *IOGA* because, after that decision, the Taxing Authorities were not legally entitled to collect the taxes.

As to the issue of the retroactive effect of *IOGA*, both Forest and Warren argue that the proper means of determining whether a decisional rule should apply retroactively is the three-prong test set forth in *Chevron*, 404 U.S. at 106–07, 92 S.Ct. 349. Forest and Warren both argue that the equities in this instance weigh heavily in favor of prospective application of *IOGA* due to the financial burden of refunding three years worth of presumptively-valid tax assessments.

Oz Gas responds that, contrary to appellants' arguments, the General Assembly's decision to authorize refunds of a tax subsequently held to be invalid or inapplicable supersedes a courts authority to determine that a refund is not available, citing to *First National Bank of Fredericksburg v. Commonwealth*, 520 Pa. 244, 553 A.2d 937 (1989). In enacting Section 5566b, *Oz Gas* argues, the General Assembly revealed its intention that, where a party pays taxes that are subsequently found to be uncollectible, the party is entitled to a refund of the taxes paid for a limited three-year period. Oz Gas contends that Section 5566b would be rendered meaningless if a court finding a tax invalid could give that finding prospective-only application, where it was plainly the legislative intention to provide a mechanism for obtaining a refund of payments made on an invalid tax. Oz Gas counters Forests argument that the language of Section 5566b discussing taxes subsequently held invalid does not define the phrase "not legally entitled" by insisting that the only reasonable interpretation of Section 5566b would link the two phrases, with the concept of a subsequent holding of invalidity giving meaning to the term not legally entitled.

On the issue of the retroactivity of *IOGA, Oz Gas* claims that retroactive application is compelled by the U.S. Supreme Courts decision in *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), where the High Court held that decisions involving interpretations of federal law must be given retroactive effect.  Oz Gas argues that this matter involves a federal question, namely the potential disparate treatment of the successful taxpayer in *IOGA* when compared to other taxpayers who paid the same invalid tax but may not be entitled to a refund.  Finally, *Oz Gas* urges this Court to adopt the U.S. Supreme Courts holdings in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Opinion Announcing the Judgment of the Court) (judicial decisions should not be subject to selective prospective application), and *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (where state penalizes taxpayers for late payment, thus requiring taxpayers to pay disputed taxes prior to obtaining review, state must provide a clear remedy).

■ The issues are twofold: whether *IOGA* applies retroactively as a jurisprudential matter, and whether 72 P.S. § 5566b applies automatically in light of the retroactive application of *IOGA.* These issues involve pure questions of law; therefore, this Court's review is plenary. *E.g., McGrory v. Commonwealth, Dep't of Transp.,* 591 Pa. 56, 915 A.2d 1155, 1158 (2007); *MCI WorldCom, Inc. v. Pa. Pub. Util. Comm'n,* 577 Pa. 294, 844 A.2d 1239, 1245 n. 3 (2004); *Mosaica Acad. Charter Sch. v. Commonwealth, Dep't of Educ.,* 572 Pa. 191, 813 A.2d 813, 817 (2002).

■ We turn first to the issue of the retroactivity of this Court's decision in *IOGA.* There is no dispute that, in the wake of *IOGA,* the taxes previously paid by *Oz Gas* in this instance are no longer collectible by the Taxing Authorities. The question is whether *IOGA* also renders those taxes uncollectible retroactively for a three-year look-back period.  The trial court found that this Court's determination in *McNulty,*

as well as application of the traditional *Chevron* test for retroactivity, controls here. We agree.

*McNulty* involved a factual scenario similar to that presented here. In *McNulty*, a trucking association challenged Pennsylvania's axle tax and marker fees, which were assessed against common carriers. Ultimately, the U.S. Supreme Court found that such taxes and fees, when charged to carriers engaged in interstate commerce, violated the Commerce Clause of the U.S. Constitution, Article I, Section 8. *Am. Trucking Assns. v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). On remand, the *McNulty* Court was charged with determining whether the U.S. Supreme Courts decision entitled the trucking association to a refund of taxes previously paid. While the matter was pending on remand, however, the U.S. Supreme Court granted *certiorari* on the very question presented on remand, *i.e.*, whether *Scheiner* applied retroactively or prospectively, and determined that the decision applied prospectively only. *Am. Trucking Assns. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion).

In *Smith*, the four-Justice plurality[5] applied the *Chevron* test and determined that: (1) the decision in *Scheiner* clearly established a new principle of law by declaring the highway taxes unconstitutional pursuant to the Commerce Clause; (2) retroactive application of the *Scheiner* decision would not forward the operation of the decision; and (3) the relevant equities dictated prospective application because the Legislature did not believe the taxes to be unconstitutional, the taxing authorities collected taxes that the authorities reasonably believed were valid, and refunding the taxes could deplete the state treasury. *Id.* at 179–82, 110 S.Ct. 2323.

5. Justice O'Connor authored the plurality opinion, which was joined by Chief Justice Rehnquist and Justices White and Kennedy. Justice Scalia concurred in the judgment, reiterating his dissenting position in *Scheiner* that the tax involved was constitutional but agreeing that, once *Scheiner* was announced, the tax could no longer be levied. Justice Stevens dissented, joined by Justices Brennan, Marshall and Blackmun, opining that a statute that is declared unconstitutional does not become unconstitutional as of the date of the decision so finding, but rather was always unconstitutional.

■ This Court in *McNulty* realized that, even after the *Smith* decision, the question remained open whether *Scheiner* was to be given "purely prospective application," *i.e.,* whether it was to be limited entirely to future cases, or instead, the benefit of the decision should be made available to the challenger in *McNulty,* which was the litigation in which the constitutional holding was announced. After analyzing the *Smith* plurality's view that *Scheiner* should be applied prospectively only, this Court explained the significance of the *Smith* plurality's view:

> Under a ruling that *Scheiner* is to be applied prospectively, it is as though the taxes collected prior to the date of the *Scheiner* decision were not unconstitutional. This is the very meaning of prospective application; the holding of unconstitutionality applies *from the date of decision,* and not before.

*McNulty,* 596 A.2d at 787. Ultimately, the *McNulty* Court, embracing the logic employed in the *Smith* plurality, and in a case involving a question of "pure" prospective application, held that the *Scheiner* decision, which struck down a state tax on constitutional grounds, applied prospectively only. This was so because, until the *Scheiner* decision issued, the taxes were deemed valid.[6]

*IOGA* differs from *Scheiner* in that *IOGA* found that the *ad valorem* taxes on oil and gas reserves, at issue in that case, were improper as a matter of statutory construction, and not on constitutional grounds. A reasoned argument could be made (as it was made by the dissenting opinion in *Smith* ) that a taxing statute found to be unconstitutional (as in *Scheiner* ) should be deemed unconstitutional from its inception because the constitutional provision the statute violated never changed. By contrast, a colorable argument can be made that an

6. The *Smith* plurality made clear that the question of the retroactivity versus prospectivity of a U.S. Supreme Court constitutional decision is itself a federal question. State courts, of course, are free to weigh in on such questions either in the first instance, or in the absence of clear guidance from the High Court. Given that *Smith* was a plurality decision, the *McNulty* Court was obliged to attempt to render a decision that would pass muster in the High Court.

interpretation of language in a taxing statute, because it is not grounded in unchanging constitutional provisions, may be said to be effective from the date of the decision announcing the interpretation.

Had this Court found the taxes assessed pursuant to Section 201(a) of the General County Assessment Law to be unconstitutional, *McNulty*, which remains good law, would counsel a conclusion that the decision had only prospective application, even though a statute that fails to pass constitutional muster presumably never was constitutional. In *IOGA*, this Court interpreted Section 201(a) and determined that *ad valorem* taxes could not be assessed against oil and gas reserves that remained underground as a matter of statutory construction. If a finding that the same tax was unconstitutional, meaning that the tax was never validly collected, would be subject to prospective-only application, it would defy logic to hold that *IOGA's* holding, based in statutory interpretation, must apply retroactively. This is so because the effect of retroactive application remains the same, regardless of the basis for the invalidation of the tax. Accordingly, pursuant to this Court's teaching in *McNulty*, we hold that the *ad valorem* taxes on underground oil and gas reserves are invalid prospectively, *i.e.*, only from the date of the *IOGA* decision and not before.

We also agree with the trial court that the conclusion that *IOGA* applies prospectively is buttressed by application of the *Chevron* test. The decision in *IOGA* established a new principle of law in that, prior to the decision, these sorts of taxes were deemed collectible pursuant to statute and precedent. For example, this Court's decision in *Rockwell*, 228 Pa. 430, 77 A. 665 (1910), which was cited by the trial court, held that the land and its subsurface minerals, including oil and gas, can be taxed separately as real estate in certain circumstances involving separate ownership of the land and the mineral rights. We recognize that *Rockwell* and cases like it were not directly on point for purposes of the question presented in *IOGA*, and thus, the *IOGA* decision did not require overruling the precedent. Nevertheless, *IOGA* acknowledged that cases such as *Rockwell* "establish, to some extent, oil and gas interests as

real estate." *IOGA,* 814 A.2d at 182 n. 5 (collecting cases). *IOGA* then distinguished those decisions by noting that they arose in the context of disputes between landowners and those to whom they sold oil and gas interests, or between life tenants and the holders of a remainder interest, all of which merely touched on the issue of taxation of the oil and gas interests. *Id.* Since none of these cases discussed the precise issue presented in *IOGA,* the question in *IOGA* is properly viewed as an issue of first impression. But the decision, as a practical matter, unsettled expectations and a long-standing governmental reliance interest.

The other two *Chevron* factors likewise counsel a prospective-only holding. Applying *IOGA* retroactively would not forward the operation of the decision because the decision speaks for itself and clearly establishes that the taxes are uncollectible going forward. And, finally, the equities weigh heavily in favor of prospective-only application. Here, as in *Smith,* the Taxing Authorities collected and made use of the taxes at issue with the good faith belief that they were legally entitled to them. Requiring a refunding of the taxes would cause substantial financial hardship to the communities involved. In addition, the Taxpayers receive substantial relief even from prospective-only application as they will not be subject to this tax going forward. Accordingly, pursuant to the *Chevron* test, we conclude that retroactive application of *IOGA* would be inappropriate.

We are aware that, following briefing and argument in this matter, this Court recently decided *Kendrick v. District Attorney of Philadelphia County,* 591 Pa. 157, 916 A.2d 529 (2007), which also addressed retroactivity in the context of statutory interpretation. The issue in *Kendrick,* as framed in a certified question from the Third Circuit Court of Appeals faced with a federal *habeas corpus* attack upon a final Pennsylvania conviction, was whether this Courts decision in *Commonwealth v. Besch,* 544 Pa. 1, 674 A.2d 655 (1996) should apply retroactively. *Besch* held that the term "enterprise" as used in the Pennsylvania Corrupt Organizations Act ("Pa.C.O.A"), 18 Pa. C.S. § 911 *et seq.,* did not contemplate enterprises that were

wholly illegitimate, such as the drug organizations in which Besch and Kendrick were involved. *Kendrick* held that the *Besch* decision of necessity had retroactive application to the effective date of the statute in part because it was the first instance in which this Court had interpreted the relevant portion of the Pa.C.O.A. For that reason, *Kendrick* held, our interpretation of the statute in *Besch* did not create a new rule of law. We reasoned, in part, as follows: "[W]hen we have not yet answered a specific question about the meaning of a statute, our initial interpretation does not announce a new rule of law. Our first pronouncement on the substance of a statutory provision is purely a clarification of existing law." *Kendrick*, 916 A.2d at 538 (quoting *Fiore v. White*, 562 Pa. 634, 757 A.2d 842, 848 (2000)). We determined that the decision in *Besch* was entitled to retroactive application because the question presented "(a) involves an interpretation of a statute; and (b) far from involving a mere procedural matter, is a statute which defines criminal conduct." *Id.* at 539. We have since emphasized that *Besch* involved a "claim [that] implicates actual innocence on the Pa.C.O.A. charge." *Commonwealth v. Williams*, 594 Pa. 366, 388, 936 A.2d 12, 25 (2007).

*Kendrick* obviously is distinguishable from the case *sub judice.*[7] The issue here is the retroactive application of a judicial decision construing a taxing statute, not a decision defining the reach of a statute defining criminal conduct. The *McNulty* Court contrasted civil and criminal cases, noting that the retroactivity interests involved in civil cases are distinct from those involved in criminal matters:

> The taxpayers argue that applying *Scheiner* purely prospectively, denying them refunds, would have the effect of discouraging litigants from seeking the overruling of existing precedent. We have noted the force of this argument before. In *Commonwealth v. Geschwendt*, [500 Pa. 120, 454 A.2d 991 (1982) ], it was observed that

---

**7.** We note that *Kendrick* did not cite to, or purport to restrict or modify, *McNulty*.

> There appears to be little support for a rule that would limit changes in state law only to future litigants and deny its benefits to the party in the proceeding in which the change is first announced. The concern with such a position is that it would stifle the initiative which is essential to a progressive, dynamic development of a system of justice.

500 Pa. at 128, 454 A.2d at 995–96. This observation, however, was directed particularly to the criminal law area, where the appeal is brought by an "individual defendant who is seeking relief for what is perceived by him to be a personal wrong or injustice [whose] concern is not the future of the law but rather its present application to him." *Id.* We distinguished the civil law area, where "the resources are available . . ., particularly in commercial matters, to institute and pursue a matter to establish new law without expectation of benefit in that lawsuit." *Id.* In cases such as this, moreover, there is always an incentive, in the avoidance of liability for payment of taxes or fees in the future, to challenge the validity of a statute.

*McNulty,* 596 A.2d at 789–90.

██ The equities in criminal matters then—and particularly in cases involving the scope of conduct that may be deemed criminal—differ from the equities to be weighed when a civil statute is at issue. A retroactivity decision in a case like *Kendrick* implicates a fundamental liberty interest which simply is not present in a civil dispute involving a tax statute. This difference in interests is exemplified by the effect of a decision involving retroactivity. *IOGA* does not subject individuals to criminal liability but rather exempts certain taxpayers from paying *ad valorem* taxes. If a tax statute under which political subdivisions have been collecting taxes is declared invalid by this Court, as happened in *IOGA*, the future effect on the political subdivisions is clear, and those entities can budget public moneys to account for any decrease in tax revenue. To apply such a decision retroactively, however, subjects the taxing entities to the potentially devastating repercussion of having to refund taxes paid, budgeted and

spent by the entities for the benefit of all, including those who challenged the tax.[8]  In contrast, the *Besch* decision exempted certain individuals from the reach of a criminal statute, vindicating a liberty interest.  Retroactive application of the decision to others who are deemed actually innocent as a result of the holding has no colorable negative consequences for a political subdivision.

■  Due to the perhaps-unique effect of holding that a decision regarding a tax statute is retroactive, the approach in *McNulty* (and the *Smith* plurality) is sensible.  To avoid the potentially devastating consequences to taxing entities, it is important that taxes collected pursuant to a valid statute remain valid unless and until otherwise determined by this Court.  The incentive to challenge still remains for the challenge, if successful, results in relief from the tax going forward.  With respect to tax statutes, then, we reaffirm *McNulty* in holding that a decision of this Court invalidating a tax statute takes effect as of the date of the decision and is not to be applied retroactively.  Accordingly, *IOGA* does not apply retroactively to invalidate taxes paid by Oz Gas for the three years prior to the issuance of that decision.

■  Given our conclusion that *IOGA* has prospective application only, the question of whether *Oz Gas* is entitled to a refund of taxes paid for the three years prior to the *IOGA* decision, under Section 5566b, is easily resolved.  Section 5566b clearly entitles a taxpayer to a refund only where "the political subdivision is not legally entitled" to the taxes.  Pursuant to *McNulty,* the significance of the prospective application of *IOGA* is that the taxes at issue were valid until the date of the decision in *IOGA,* and the Taxing Authorities were legally entitled to collect the taxes prior to that decision.  Thus, because the authorities were legally entitled to the taxes

8.  The trial court stated that Oz Gas claimed to have paid a total of $177,389.28, with interest bringing the total of the refund it sought, exclusive of prejudgment interest, to $206,222.83.  The Taxing Authorities asserted that their total exposure from all taxpayers during the relevant three-year period totaled nearly $1.9 million.

paid prior to the *IOGA* decision, no refund is warranted under Section 5566b.

Accordingly, for the foregoing reasons, the decision of the Commonwealth Court is reversed.

Chief Justice CAPPY, Justice SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.