**[J-20-2024] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| ALCATEL-LUCENT USA INC., | : | No. 8 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 803 FR |
| | : | 2017 dated December 28, 2022, |
| v. | : | sustaining the exceptions filed on |
| | : | October 13, 2021 to the September |
| | : | 13, 2021 Order, Reversing the |
| COMMONWEALTH OF PENNSYLVANIA, | : | decision of the PA Board of Finance |
| | : | and Revenue at No. 1628908 dated |
| Appellant | : | August 23, 2017 and remanding. |
| | : | |
| | : | ARGUED: March 6, 2024 |

**CONCURRING OPINION**

**JUSTICE MUNDY**                    **DECIDED: November 20, 2024**

I join the majority's well-reasoned opinion and write to observe that, ever since *General Motors v. Commonwealth*, 265 A.3d 353 (Pa. 2021), the discussion of whether *Nextel Communications v. Department of Revenue*, 171 A.3d 682 (Pa. 2017), should apply retroactively to other tax laws has involved the use of shorthand terminology that has the potential to confuse the already-difficult topic of retroactivity in the tax arena. Consistent with the foundational precept that "the holding of a judicial decision is to be read against its facts," *Oliver v. City of Pittsburgh*, 11 A.3d 960, 966 (Pa. 2011); *accord Cohens v. State of Virginia*, 19 U.S. (6 Wheat.) 264, 399-400 (1821) (Marshall, C.J.), the holding in *Nextel* only involved the statute at issue in that case. To me, therefore, it seems more precise to say that the question before us is whether the stipulated-to invalidity of the present statute (pursuant to the *reasoning* of *Nextel*) should apply retroactively to the taxpayer now seeking a refund of taxes paid under *that* statute.

*Nextel* involved a challenge to the 2007 tax statute's flat $3 million net-loss carryover (NLC) cap. We reached three distinct holdings: the 2007 flat-dollar cap was unconstitutional; per a severability analysis, only the flat-dollar cap should be severed (rather than also severing the percentage cap or severing the entire NLC scheme); and Nextel was not entitled to a tax refund. When a taxpayer forwards a meritorious challenge to a taxing scheme in hopes of obtaining a refund, our usual practice is to determine whether the holding applies retroactively.[1] Although in *Nextel* the taxpayer's challenge was indeed meritorious, and it was seeking a refund, we did not undertake such an analysis. Rather – and contrary to the general rule that tax-invalidation rulings only apply prospectively, *see* Majority Op. at 14 – we applied the holding to the taxpayer, Nextel, and determined that no refund was due because Nextel had paid the correct amount of taxes under the as-severed statute. *See Nextel*, 171 A.3d at 705.

This led to the situation in *General Motors*, which we portrayed as involving the question of whether *Nextel* should be applied retrospectively. *See General Motors*, 265

---

[1] In cases where a tax law is declared invalid, applying the holding *retroactively* means applying it to the present litigants and others with cases pending on direct review when the holding was announced, where the same issue was raised and preserved. This seems to be the sense in which *General Motors* used the term, and such is consistent with its use in other arenas. *See, e.g.*, *Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1102 (Pa. 1991). Applying the new rule *purely prospectively* means applying it only to events occurring after the ruling is announced. *See James B. Beam Distilling v. Georgia*, 501 U.S. 529, 535-37 (1991) (plurality); *McNulty*, 596 A.2d at 790. The underlying "events" in such cases are the transactions that caused the corporate taxpayer to incur tax liability. *See McNulty*, 596 A.2d at 791 (quoting *Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 188 (1990) (plurality)).

Another possibility, not applicable here, is to apply the holding to the litigants in the case in which it is announced, but not to other cases where the underlying events predated the announcement. This is called *selective prospectivity* (or *modified prospectivity*). *See James B. Beam*, 501 U.S. at 537. A *fully retroactive* decision in a tax case (again not presently applicable) is one in which the new rule is applied relative to preceding events even as to future litigants, *i.e.*, those for whom review is not yet pending, "consistent with *res judicata* and procedural barriers such as statutes of limitations." *Id.*

A.3d at 366 (referring to the question before the Court as "whether this Court's 2017 decision in *Nextel* should apply retroactively to GM's 2001 Tax Return").  However, we were dealing with a different statute, the 2001 statute, and the parties stipulated that the flat-dollar cap appearing in *that* statute was just as defective as the one in the 2007 statute at issue in *Nextel*.[2]  Ordinarily, a reviewing court declares a tax statute invalid and then separately has to figure out what to do about all the taxpayers who already paid taxes under that enactment – the one that was invalidated.[3]  That is what is meant by the question, does the holding apply "retroactively":  do the taxpayers who successfully challenged the law get their money back?  When understood in that way, the question before the *General Motors* Court was whether the (stipulated) invalidity of the 2001 tax statute should apply retroactively to General Motors's 2001 tax return – *not* whether *Nextel*'s holding (invalidating the 2007 statute) should apply retroactively to General Motors.  This is more than a technicality because, as discussed, the question of retroactivity follows from the invalidation of the statute under which government extracted the very taxes sought to be recouped.

Viewed in this light, and taking a step back, the underlying circumstances in *General Motors* involved two potential questions:  whether the same reasoning used in *Nextel* relative to the 2007 statute should be used to invalidate the 2001 statute, and whether that invalidation should be applied retroactively to General Motors's 2001 tax return.  As to the first question, as noted, the parties agreed that the constitutional defect

---

[2] The 2001 NLC statute included a flat $2 million cap but no percentage cap.  In the wake of *Nextel*, it was obvious to both parties in *General Motors* that the 2001 statute was defective, and hence, the parties did not dispute the issue.  *See General Motors*, 265 A.3d at 360-61 (reflecting the parties' stipulation to the constitutional defect).

[3] *See Sands Bethworks Gaming, LLC v. Dep't of Revenue*, 207 A.3d 315, 325 (Pa. 2019); *Mount Airy #1, LLC v. Dep't of Revenue*, 154 A.3d 268, 280 n.11 (Pa. 2016); *Oz Gas, Ltd. v. Warren Area Sch. Dist.*, 938 A.2d 274, 283 (Pa. 2007); *Am. Trucking Ass'ns v. McNulty*, 596 A.2d 784, 790 (Pa. 1988).

discerned in *Nextel* was identical to the one inherent in the 2001 statute at issue in *General Motors*. *See supra* note 2.[4] Given that we credited Nextel's argument as to the 2007 law, we surely would have credited the same argument made by General Motors as to the 2001 law even if the *Nextel* litigation had not reached us first.[5] The closely-contested issue, of course, was the second one: whether the recognition in *General Motors* of the invalidity of the *2001* statute's flat-dollar NLC cap should be applied retroactively to General Motors. We did not directly answer that question. Because we ended up severing the entire NLC scheme, *see General Motors*, 265 A.3d at 375, a retroactive application would have meant General Motors paid *too little* in taxes, as it had availed itself of the NLC provision (albeit subject to a cap) to reduce its tax liability. We nonetheless awarded a refund under the Due Process Clause, *see infra* note 7, which had the effect of superseding or mooting out the retroactivity issue.[6]

---

[4] It is also identical to the defect in the 2014 statute presently under review. *See* Majority Op. at 7-8 (reciting that the 2014 statute includes a flat $4 million or 25% cap, whichever is greater).

[5] Similarly, if Appellee had been the first taxpayer to reach us with this argument, we, again, would presently credit it. Thus, there has never been any real issue of whether *Nextel* applies retroactively to invalidate the statute under review.

This is in contrast to the *General Motors* Court's statement that "if *Nextel* applies retroactively, then the $2 million cap included in the 2001 NLC deduction provision violates the Uniformity Clause for the same reasons that the 2007 $3 million NLC deduction cap was deemed unconstitutional in *Nextel*." *General Motors*, 265 A.3d at 373. There is no "if" about it.

[6]

I agree with the majority that *General Motors* erred in holding that *Nextel* did not establish a new principle of law for purposes of the applicable retroactivity standard. First, and as the majority highlights, *see* Majority Op. at 11-12, our decision that most closely dealt with the present topic, *Commonwealth v. Warner Brothers Theaters*, 27 A.2d 62 (Pa. 1942), had held a similar flat-dollar cap did *not* violate uniformity, and that decision was still good law when the General Assembly enacted the tax at issue. I believe it would be unfair to tell our coequal branches of government that they are obligated to recognize when our precedents are wrongly decided, and to refrain from relying on them in formulating tax (continued…)

In the instant matter, we depart from *General Motors* upon determining the "holding in *Nextel*" was not retroactive. Majority Op. at 14. Like in *General Motors*, this is shorthand: it means the undisputed circumstance, that in light of *Nextel*'s reasoning the 2014 tax statute's flat-dollar cap also violates the Uniformity Clause, does not entitle the taxpayer to a refund. It seems likely the same will be true in relation to any other challenges currently pending where the taxpayer claims a particular tax year's flat-dollar NLC cap violates uniformity.[7]

policy on pain of having their reliance interests swept aside as insignificant. *See* Majority Op. at 13 ("The question of retroactivity is quintessentially about reliance interests.").

Second, although the general precept that the tax rate cannot depend on the amount of the thing being taxed was already established as a general principle, *see id*. at 6, 13, in *Nextel* this Court first realized the precept applies to flat-dollar caps on carried-over net losses. In *Nextel* the statute's nonuniformity on such grounds only came into view when the taxpayer constructed a creative argument based solely on how the flat-dollar cap discriminated between two subgroups of a defined subset of taxpayers. The subset was taxpayers whose carried-over net losses were greater than their net income for the relevant tax year. One subgroup of that subset paid no taxes, while the other subgroup paid taxes. This, in my view, is too far removed from the more general precept to be described as "clearly foreshadowed" by earlier decisional law. *Chevron*, 404 U.S. at 106.

[7] I am not unsympathetic to one aspect of the dissenting expression: that a judicial ruling that some aspect of a tax statute is unconstitutional means it was void *ab initio*. *See* Dissenting Op. at 10 (Brobson, J.). But even if we applied that precept in the instant case, I would not regard it as requiring a different outcome because, as in *Nextel*, the taxes assessed and paid by Appellee were correct absent the offending provision. That being the case, Appellee would only be entitled to a refund if the Due Process Clause separately demanded it. In this latter regard, a refund might be necessitated per *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18 (1990), *if* the challenged statute violated the federal Interstate Commerce Clause. But I am not convinced the present violation of the state Uniformity Clause requires the same result. In particular, and notwithstanding the conclusory assertion in *General Motors* that Commerce Clause violations and Uniformity Clause violations should be treated the same, *see General Motors*, 265 A.3d at 379, I find *McKesson* materially distinguishable from the present controversy.

In *McKesson*, the Florida tax was unconstitutional when it became law inasmuch as Hawaii's substantively-identical scheme had already been invalidated. *See McKesson*, 496 U.S. at 23 (noting that after the decision in *Bacchus Imports v. Dias*, 468 U.S. 263 (1984), was announced, Florida enacted the law at issue in *McKesson*). By contrast, the (continued…)

2014 tax at issue here was enacted and applied before *Nextel* was decided, in an era when *Commonwealth v. Warner Brothers Theatres*, 27 A.2d 62 (Pa. 1942), was still good law. After *Nextel* was decided in 2017, the Department could perhaps still have issued thousands of retroactive assessments to make up for the revenue shortfall stemming from tax refunds for Appellee and similarly-situated taxpayers. *See* Stipulation of Facts ¶ 19 (reflecting that over 16,500 corporations used the flat-dollar NLC-carryover limitation for the 2014 tax year). But it relied on *Nextel*'s rejection of a retroactive remedy in deciding not to do so. *See id*. ¶ 22, *discussed in* Brief for Appellant at 28. By the time we reversed course in *General Motors*, the three-year limitation period for such actions had expired, and none of the aforementioned taxpayers had consented in writing to an extension. *See id*. ¶ 21. As a consequence, the Department is now unable to back-charge taxpayers whose carried-over losses were subtracted in excess of 25% of their income. Therefore, while the tax imposed in the present dispute may have been "discriminatory" in the sense that it allowed some corporations (but not Appellee) to deduct too much, it is not clear to me that the Due Process Clause would require a refund in these circumstances even under a retroactive application of our present ruling.