**[J-20-2024] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| ALCATEL-LUCENT USA INC., | : | No. 8 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 803 FR |
| | : | 2017 dated December 28, 2022, |
| v. | : | sustaining the exceptions filed on |
| | : | October 13, 2021 to the September |
| | : | 13, 2021 Order, reversing the |
| COMMONWEALTH OF PENNSYLVANIA, | : | decision of the PA Board of Finance |
| | : | and Revenue at No. 1628908 dated |
| Appellant | : | August 23, 2017 and remanding. |
| | : | |
| | : | ARGUED: March 6, 2024 |

**CONCURRING AND DISSENTING OPINION**

**CHIEF JUSTICE TODD**                     **DECIDED: November 20, 2024**

I agree with the majority to the extent it concludes that our decision in *Nextel*[1] applies prospectively with respect to all Uniformity Clause[2] challenges, pending at the time of that decision, to net loss carryover ("NLC") provisions of the Pennsylvania Revenue Code that are of the same structure as the one at issue in *Nextel*. Unlike the majority, however, in my view, this conclusion is not irreconcilable with our Court's relatively recent decision in *General Motors*[3] in which we retroactively applied the

---

[1] *Nextel Communications of the Mid Atlantic, Inc. v. Pennsylvania Department of Revenue*, 171 A.3d 682 (Pa. 2017).

[2] This provision of our Constitution provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. 8, § 1.

[3] *General Motors v. Commonwealth*, 265 A.3d 353 (Pa. 2021).

rationale and remedy of *Nextel* to a pending challenge to an NLC provision of a *different* structure; thus, I would not overrule that decision. My reasoning follows.

At issue in *Nextel* was the 2007 NLC provision under the Revenue Code which provided a corporate taxpayer with the option to deduct from taxable income the amount of its prior years' net losses up to a flat dollar amount (the "flat cap") of $3 million, or up to 12.5% of its income for that year (the "percentage cap"), whichever was greater. In addressing Nextel's as-applied challenge to this provision under the Uniformity Clause, we concluded that the flat cap deduction portion violated this constitutional provision because it placed different tax burdens on classes of similarly situated taxpayers based solely on the amount of the taxpayers' income. As a remedy for this violation, and in accordance with what we discerned was best aligned with the General Assembly's intent in enacting this deduction, we severed the flat cap portion of the provision from the percentage cap, thereby preserving the 12.5% deduction for all taxpayers. Because Nextel had already availed itself of this deduction, our Court concluded it was not entitled to any refund of the taxes which it had paid, as, having taken the maximum percentage deduction, it had paid only what it was legally obligated to pay.

At issue in the instant case is the 2014 NLC provision, which allowed a corporation to take a NLC deduction for that tax year in the amount of either 25% of its taxable income, or $4,000,000, whichever was greater. This litigation challenging the 2014 NLC provision was pending before the Commonwealth Court at the time of our *Nextel* decision, and, as the majority recounts, the parties recognized that, under the reasoning of *Nextel*, the flat cap portion of the 2014 NLC statute was likewise violative of the Uniformity Clause. Indeed, the parties stipulated to that fact.

Hence, the central inquiry in this case is whether this holding of *Nextel* should be given retroactive effect for the purpose of granting Appellee remedial relief in the form of a refund for all corporate income taxes it paid in 2014. While I agree with the majority that we should reject Appellee's entreaty to apply *Nextel* retroactively for this purpose, in reaching this conclusion, the majority overrules our decision in *General Motors* which is of recent vintage. In so doing, the majority fails to recognize a critical distinction between this case and *General Motors*: *General Motors* addressed a NLC provision which afforded a corporate taxpayer *only* a flat cap deduction of $2,000,000 for the 2001 tax year, and in *General Motors* we applied *Nextel* retroactively to effectively strike that cap in its entirety and so granted the taxpayer the remedy of a refund of all taxes which it previously paid under that statute.[4]

As our Court has emphasized repeatedly in our jurisprudence involving the retroactivity of our judicial decisions, resolution of such questions is not a rote, mechanical exercise in the application of a "one-size fits all" generic rule. *Passerello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014). Rather, such a determination must be conducted on a case-by-case basis. *Id.*; *see also Blackwell v. State Ethics Commission*, 589 A.2d 1094, 1099 (Pa. 1991).

---

[4] I would agree with Justice Mundy that, in *General Motors*, we stated that we were striking the 2001 NLC provision in its entirety. *See* Concurring Opinion (Mundy J.) at 4, n.6. However, what we ultimately did, as a due process matter, was afford General Motors, as the challenging taxpayer, tax relief by leaving the NLC deduction in place and allowing General Motors to apply it for that tax year without the flat cap portion. *See General Motors*, 265 A.3d at 380 ("We affirm the Commonwealth Court's order to the extent it remands to the Finance and Review Board to recalculate GM's corporate net income tax *without capping its NLC deduction* and to issue a refund based upon that recalculation." (emphasis added)). It is this chosen remedy that I focus on for the purpose of the full *Chevron* retroactivity analysis I discuss below.

Like the majority, in my view, the three-part test for retroactivity in *Chevron Oil Company v. Huson*, 404 U.S. 97 (1971) (plurality), remains the governing analysis under Pennsylvania law for questions of retroactivity involving decisions from our Court invalidating taxing statutes, as we reaffirmed in *Oz Gas v. Warren Area School District*, 938 A.2d 274 (Pa. 2007).[5]  In applying this test to determine whether a decision of our Court is to be given retroactive or prospective effect, we consider three discrete factors: (1) whether the decision established a new principle of law; (2) whether retroactive application of the decision will further its operation; and (3) an evaluation of the equities involved in a prospective versus retroactive application of the decision.  *Id.* at 278.  We have also indicated that the third factor of this test — the weighing of the equities — is of greater importance than the other two.  *American Trucking Associations v. McNulty*, 596 A.2d 784, 790 (Pa. 1991).

---

[5]  As the majority has noted, *see* Majority Opinion at 15, n.55, under the *Sunburst* doctrine, "[a] state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Great Northern Railway Company v. Sunburst Oil and Refining*, 287 U.S. 358, 364 (1932).  Thus, even though the high Court in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), may have abandoned the *Chevron* test in holding that decisions announcing a rule of federal law automatically applied retroactively to cases pending before it, the Court did not purport to overrule its *Sunburst* decision.  Rather, the *Harper* Court continued to recognize that states retain the right to determine whether their own judicial decisions interpreting state law must be given retroactive effect, which it viewed as distinguishable from a state's obligation under the Supremacy Clause of the United States Constitution to give United States Supreme Court decisions interpreting the United States Constitution or federal law retroactive effect.  *See Harper*, 509 U.S. at 100 ("Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law cannot extend to their interpretations of federal law." (citation omitted)).  In my view, *Oz Gas* reflects our Court's deliberate decision to continue to apply the three *Chevron* factors, purely as a matter of Pennsylvania law, to determine whether a decision of our Court invalidating a Pennsylvania taxing statute will be given retroactive application.

As the majority has recognized, in accordance with the teaching of *Oz Gas*, all three components of this test are relevant in determining whether our *Nextel* decision is to be given retroactive effect. Majority Opinion at 10; *see also Oz Gas*, 938 A.2d at 283. In *General Motors*, our Court analyzed the first factor of the *Chevron* test and determined that *Nextel* did not announce a new rule of law.[6] Majority Opinion at 11-14. The late Chief Justice Baer, writing for a majority of our Court, undertook an exhaustive analysis of the caselaw on which the *Nextel* decision rested. *See General Motors*, 265 A.3d at 368-373 (discussing *Cope's Estate*, 43 Pa. 79 (Pa. 1899); *Kelley v. Kalodner*, 181 A. 598 (Pa. 1935); *Saulsbury v. Bethlehem Steel,* 196 A.2d 664 (Pa. 1964), *Amidon v. Kane*, 279 A.2d 53 (Pa. 1971) and *Mount Airy, L.LC. v. Pa. Department of Revenue*, 154 A.3d 268 (Pa. 2016))*.* Based on his evaluation of that foundational precedent, he concluded:

> [R]ather than establishing a new principle of law, *Nextel* faithfully applied this Court's jurisprudence developed consistently in *Cope's Estate*, *Kelley*, *Saulsbury*, *Amidon*, and *Mount Airy* holding that the Uniformity Clause is violated where a difference in taxation is "based solely on a difference in quantity of precisely the same kind of property." *Nextel*, 171 A.3d at 699 (quoting *Cope's Estate*, 43 A. at 81). We observed that the Court has "consistently viewed as unconstitutional" statutes which exempt entire classes of taxpayers from the payment of taxes based solely upon whether their income or property value falls below the statutorily designated exemption value, as it required the non-exempted taxpayers to bear the full tax burden. *Id* at 697. We have repeatedly deemed these quantity-based distinctions in tax burden to be "necessarily unjust, arbitrary and illegal." *Id.* at 699. *Nextel merely applied this century of jurisprudence to the NLC deduction provision*.

*Id.* at 373 (emphasis added).

---

[6] While our Court was arguably remiss in failing to address the remaining two *Chevron* factors in our opinion in *General Motors*, as I discuss below, an analysis of those two factors would have led to the same result.

I joined then-Chief Justice Baer's analysis of this question because I considered it to be an accurate assessment of the effect of our *Nextel* decision – namely, that it did not announce a new rule of law. *See Blackwell,* 589 A.2d at 802 (holding that a case which merely applies well-established principles of constitutional law to a new factual situation is not regarded as having announced a new rule of law). Thus, I disagree with the majority that this conclusion was in error. *See* Majority Opinion at 11.

Nevertheless, I agree with the result in the instant case because, unlike in *General Motors*, I consider the latter two factors of the *Chevron* test to weigh heavily in favor of a prospective-only application of *Nextel's* holding herein and to other pending challenges to NLC statutes which follow the same structure and design as the one at issue.

While we did not expressly analyze the second and third *Chevron* factors in our *General Motors* opinion, applying those factors to the evidence of record in that matter nevertheless supported the retroactive application of *Nextel*'s holding therein. The second *Chevron* factor requires a court to consider whether retroactive application of the decision will further its operation. *Oz Gas,* 938 A.2d at 278. The central objective of *Nextel*, consistent with the fundamental purpose of the Uniformity Clause, was to equalize the tax liability of corporate taxpayers by ensuring that each was eligible to receive the same allowable benefit of a constitutionally sound NLC deduction against their taxable income. Because the NLC statute in *General Motors* allowed only a flat cap deduction – which, under the holding of *Nextel*, was violative of the Uniformity Clause – permitting General Motors to avail itself of the NLC deduction, but removing the cap on that deduction and thereby allowing an unlimited deduction, furthered *Nextel's* purpose by equalizing the tax liability of General Motors with that of all other taxpayers by giving it the

benefit of the same unlimited NLC deduction for that tax year which those taxpayers, who fell under the cap, were allowed to take.[7]

Regarding the third factor of the *Chevron* test, whether the equities weighed in favor of retroactive or prospective application, in *General Motors* the Commonwealth had not presented evidence in the lower courts to demonstrate that retroactive application would impair the fiscal health of the Commonwealth. *See General Motors v. Commonwealth*, 222 A.3d 454, 473 (Pa. Cmwlth. 2019) ("[T]he Commonwealth did not present evidence regarding this tax burden beyond the refund it would owe GM. It has not shown that the Commonwealth's financial health will be impaired. Thus, it did not carry its burden of showing the inequities present here."). Thus, this factor did not weigh in favor of prospective-only application.

By contrast, in the case *sub judice*, analysis of the second and third *Chevron* factors strongly favors prospective-only application. With respect to the second factor, retroactive application of *Nextel* in this case would not further its operation. Here, retroactive application of *Nextel's* holding in this matter would do nothing to further the purpose of that case — to equalize the legal tax liability among corporate taxpayers eligible to take the NLC deduction — given that, just as in *Nextel*, the appropriate remedy would be severance of the flat cap from the 2014 NLC statute, while leaving the

---

[7] As Justice McCaffery has highlighted in his concurrence, our chosen remedy of allowing General Motors an unlimited deduction for the 2001 tax year resulted in it paying *no* taxes for that tax year; consequently, as he cogently points out, this result is seemingly at odds with the purpose of the Uniformity Clause which is to ensure that no person or entity is unfairly exempted from its obligation to pay taxes. Concurring Opinion (McCaffery, J.) at 4. Although I find merit to his suggestion that alternative remedial measures should be considered by the General Assembly for these situations, we are, at present, constrained to fashion a suitable remedy using the tools which our Constitution and the law currently provide.

percentage deduction in place. Notably, Appellee has *already* received the full benefit of this constitutionally permitted percentage deduction, having taken it for the 2014 tax year at issue. It has, therefore, received the same tax benefit which all taxpayers were constitutionally eligible to claim, and severance of the flat cap is not necessary to equalize Appellee's legal tax liability with that of other taxpayers.

Similarly, the third *Chevron* factor — whether a balancing of the equities favors retrospective or prospective application — weighs in favor of prospective application in this case. As our Court underscored in *Oz Gas*, there is a "potentially devastating repercussion, [in requiring a government] to refund taxes paid, budgeted and spent by the entities for the benefit of all, *including those who challenged the tax*." 938 A.2d at 285 (emphasis added). The negative impact of retroactive application of *Nextel* is manifest in this situation. As the majority notes, due to the number of years in which this type of tax deduction was permitted by the General Assembly, and, based on the number of refund petitions currently pending, the deleterious financial consequences to the Commonwealth are significant, given that the projected estimated cost of refunds to eligible taxpayers is estimated to be in excess of $358 million. Majority Opinion at 18, n.65; Commonwealth Brief at 23 n.4.[8]

Accordingly, I agree with the majority to the extent it applies *Nextel* prospectively to cases such as this one involving pending Uniformity Clause challenges to NLC deduction provisions which are structured like the provisions at issue in *Nextel* and the present matter; however, I would not overrule *General Motors*, but, instead, would cabin

---

[8] The Commonwealth points out that, by contrast, the Commonwealth's liability for tax refunds occasioned by our *General Motors* decision amounted to just over 1/10 of that amount, or $37 million. Commonwealth Brief at 23.

its rationale and chosen remedy to pending Uniformity Clause challenges brought to NLC provisions that provide only a flat cap deduction.

Additionally, and notably, in overruling *General Motors*, the majority does not discuss, let alone analyze, *stare decisis* principles. *Stare decisis* embodies the notion "that for purposes of certainty and stability in the law, 'a conclusion reached in one case should be applied to those which follow, *if the facts are substantially the same*.'" *Stilp v. Commonwealth*, 905 A.2d 918, 966-67 (Pa. 2006) (quoting *Burke v. Pittsburgh Limestone Corp.*, 100 A.2d 595, 598 (Pa. 1953)) (emphasis added). As discussed above, in this case we are deciding, *for the first time*, whether the holding of *Nextel* retroactively applies to invalidate the flat cap deduction of the 2014 NLC statute, and thus entitling a taxpayer who paid taxes after taking that deduction to a full refund. Accordingly, in my view, *stare decisis* is not implicated. *See, e.g. Commonwealth v. Rosario*, 294 A.3d. 338, 356 (Pa. 2023) (*stare decisis* is not implicated whenever our Court interprets and applies a statute for the first time).

Regardless, "[t]o reverse a decision, we demand a special justification, over and above the belief that the precedent was wrongly decided." *Commonwealth v. Alexander*, 243 A.3d 177, 196 (Pa. 2020) (quotation marks and citation omitted). Ultimately, the question of whether it is appropriate for this Court to overrule prior precedent depends on a number of factors such as "the age and lineage of the decision[], as well as 'the quality of [its] reasoning, the workability of the rule it established, its consistency with other related decisions, . . . and reliance on the decision.'" *Allegheny Reproductive Health v. Pennsylvania Department of Human Services,* 309 A.3d 808, 850 (Pa. 2024) (quoting *Alexander*, 243 A.3d at 196).

The majority offers no special justification to overrule *General Motors*. That decision is only three years old, and it relied on well-established tenets of our Uniformity Clause jurisprudence. Further, as discussed above, I do not find *General Motors* to be poorly reasoned. Nor did it create an unworkable rule: its chosen remedy of striking the flat cap-only portion of the NLC deduction for the challenging taxpayer and allowing it an unlimited NLC deduction in those limited number of cases where this Uniformity Clause challenge was preserved on appeal at the time of our *Nextel* decision is straightforward and easily applied. Finally, taxpayers who have preserved that issue are entitled to rely on *General Motors*, and the Department is likewise entitled to rely on it in calculating the effect of its required remedy on the public fisc.

For all these reasons, I concur in the result reached by the majority, but dissent from its decision to overrule *General Motors*.

Justice Donohue joins this concurring and dissenting opinion.