# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Howard Dunetz,                :
             Petitioner       :
                             :
           v.                   :   No. 302 C.D. 2022
                             :   Argued: March 8, 2023
Charles H. Sacks D.M.D., P.C.     :
(Workers' Compensation Appeal     :
Board),                         :
            Respondent     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER           FILED: October 26, 2023

Howard Dunetz (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) that granted Claimant's Reinstatement Petition in part and granted the Modification Petition of Charles H. Sacks, D.M.D., P.C. (Employer). The WCJ reinstated Claimant's workers' compensation (WC) benefits from partial disability to total disability from June 12, 2020, the date of Claimant's Reinstatement Petition, until December 15, 2020, the date Employer obtained an Impairment Rating Evaluation (IRE) of Claimant reflecting a 17% whole-body impairment. The WCJ also modified Claimant's benefits from total disability to partial disability as of the date of the IRE, granted Employer a credit for payments of partial disability benefits it had paid Claimant prior to December 15, 2020, and found that Claimant was no longer entitled to wage loss benefits after December 15, 2020, because he had

already received the 500 weeks of partial disability benefits permitted by the Workers' Compensation Act (Act).[1]

Claimant argues the Board erred in affirming the WCJ's decision to reinstate total disability benefits as of June 12, 2020, rather than as of December 2, 2010, the date his benefits were originally modified based on the results of a prior IRE. Claimant contends that in *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 232 A.3d 629 (Pa. 2020), our Supreme Court indicated that *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz*) (finding the IRE process under former Section 306(a.2) of the Act[2] unconstitutional and striking that provision from the Act), could be given fully retroactive effect in extraordinary circumstances and approved the use of an equitable balancing test. Claimant asserts that his case is such an extraordinary circumstance that warrants application of the equitable balancing test and that *Protz* should be fully retroactive as to him. Claimant also asserts that the Court should reconsider its prior decisions holding that (1) *Protz* would have full retroactive effect only for claimants who had cases pending on appeal at the time *Protz* was decided; and (2) Section 306(a.3) of the Act, which was added by Act 111,[3] wherein the General Assembly reestablished the IRE process following *Protz* and authorized employers to receive credit for partial disability benefits paid under the prior IRE system, could be applied retroactively. Employer replies that it satisfied all of the requirements for obtaining the granted relief, and, therefore, such relief was properly granted. According to Employer, Claimant's arguments have been considered, and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. Section 306(b)(1) of the Act limits the receipt of partial disability benefits to 500 weeks. 77 P.S. § 512(1).

[2] Added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by Section 1 of the Act of October 24, 2018, P.L. 714, No. 111.

[3] 77 P.S. § 511.3.

rejected, by this Court on multiple occasions and there is no reason for the Court to depart from its existing precedent.

## I.  BACKGROUND

The relevant facts are not disputed.  In May 2007, Claimant sustained a work-related injury to his cervical spine, for which he received total disability benefits. (WCJ Decision, Finding of Fact (FOF) ¶ 3.[4])  Employer, via a Notice of Change of WC Disability Status (Notice of Change) dated January 26, 2011, changed the status of Claimant's benefits from total to partial disability[5] as of December 2, 2010, the date of the IRE that found Claimant had an eight percent whole-person impairment rating (2010 Modification).  (FOF ¶¶ 3-4, 11.)  Claimant did not contest the Notice of Change or otherwise challenge the 2010 Modification.

On June 12, 2020, Claimant filed the Reinstatement Petition, alleging that the 2010 Modification was unconstitutional following *Protz* and requesting reinstatement to total disability as of the date of the original IRE modification.  (*Id.* ¶¶ 1, 4.)  The parties stipulated that Employer paid Claimant 500 weeks of partial disability benefits through July 2, 2020, at which time Employer stopped paying indemnity benefits.  (*Id.* ¶ 4.)  Employer filed its Modification Petition on January 22, 2021, seeking the modification of Claimant's benefits from total to partial based on the December 15, 2020 IRE resulting in a 17% whole-body impairment rating, of which it presented evidence at a hearing before the WCJ.  (*Id.* ¶¶ 2, 13-14.)

The WCJ found:

---

[4] The WCJ's Decision is found at pages 16a through 25a of the Reproduced Record.

[5] The practical effect of "a change in status from total to partial disability" does not "alter the rate of compensation; rather [it] . . . limit[s] the receipt of partial disability benefits to 500 weeks." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 602 n.2 (Pa. Cmwlth. 2018).

3

Claimant is entitled to a reinstatement of benefits from partial disability to total disability effective June 12, 2020, the date Claimant filed his Reinstatement Petition. Claimant is entitled to temporary total disability benefits for the period of June 12, 2020[,] to December 15, 2020, the date of the IRE . . . . [Employer] is entitled to a credit for the weeks of partial disability benefits paid to Claimant. As of December 15, 2020, Claimant had received 500 weeks of partial disability benefits, and therefore his benefits are exhausted as of December 15, 2020.

(FOF ¶ 21.) Accordingly, the WCJ granted Claimant's Reinstatement Petition in part and granted Employer's Modification Petition in its entirety.[6] (WCJ Decision, Order.)

Claimant appealed to the Board. Relevantly, Claimant asserted the WCJ misapplied *Protz* and should have "perform[ed] the equitable balancing contemplated in *Dana Holding*" to reinstate Claimant's benefits to total as of the date of the initial IRE. (Claimant's Appeal to the Board (Appeal) at 3-4, Reproduced Record (R.R.) at 28a-29a.) Claimant also argued that retroactively applying Act 111 to allow Employer a credit for partial benefits previously paid pursuant to an unconstitutional and void IRE is, itself, unconstitutional because it interferes with Claimant's vested rights and violates his due process rights. (*Id.*)

The Board affirmed. In doing so, it cited various decisions of our Supreme Court and this Court, which the Board viewed as supporting the WCJ's decision to reinstate Claimant's total disability status as of the date of the Reinstatement Petition, not the initial modification. (Board Opinion (Op.) at 4-6 (citing *Dana Holding Corp.*, 232 A.3d at 649; *White v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 237 A.3d 1225 (Pa. Cmwlth. 2020) (*en banc*), *appeal denied*, 244

---

[6] Claimant filed several other petitions, which the WCJ dismissed as moot. Claimant did not appeal the dismissal of those petitions to the Board, and, therefore, they are not the subject of this appeal.

A.3d 1230 (Pa. 2021); *Weidenhammer v. Workers' Comp. Appeal Bd. (Albright Coll.)*, 232 A.3d 986 (Pa. Cmwlth.), *appeal denied*, 242 A.3d 912 (Pa. 2020); *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018) (*en banc*)).) As to Claimant's challenges to Act 111's constitutionality, the Board noted it lacked jurisdiction to decide the constitutional issues raised but observed this Court had addressed such challenges to Act 111 and found them to be without merit. (Board Op. at 7-10 (citing *Hutchinson v. Annville Township (Workers' Comp. Appeal Bd.)*, 260 A.3d 360 (Pa. Cmwlth. 2021), *petition for allowance of appeal denied*, 279 A.3d 1180 (Pa. 2022); *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company, LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021); *Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020) (*en banc*); *Pa. AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019), *aff'd* (Pa., No. 88 MAP 2019, filed Aug. 18, 2020)).) Claimant now petitions this Court for review.[7]

## II. DISCUSSION
### A. Whether the Board erred in affirming the reinstatement of Claimant's total disability benefits as of the Date of the Reinstatement Petition, not the 2010 Modification.

Claimant's arguments regarding the retroactive application of *Protz* are two-fold: he seeks relief on behalf of all claimants, asserting that our prior cases that do not give *Protz* full retroactivity should be reconsidered; and he seeks relief on behalf of himself, alone, citing an equitable exception to the general rule against retroactivity in extraordinary circumstances that he asserts the Supreme Court

---

[7] This Court's scope of review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

5

recognized in *Dana Holding*. With respect to Claimant's first argument, which reiterates the same positions that have been repeatedly considered and rejected by this Court, we are not persuaded to deviate from this precedent, particularly where multiple petitions for allowance of appeal on this issue have been filed with, and denied by, our Supreme Court. *See, e.g.*, *Hutchinson*, 260 A.3d at 364-65; *White*, 237 A.3d at 1231; *Weidenhammer*, 232 A.3d at 992-95; *Whitfield*, 188 A.3d at 615-17.[8] In contrast, Claimant's second argument raises a novel ground for relief not previously asserted by a party or addressed by this Court under circumstances such as this.[9]

Claimant argues that in *Dana Holding*, our Supreme Court sanctioned an "equitable balancing" test be used in "extraordinary cases" that would allow for *Protz* to be retroactively applied even in cases where no direct appeal was pending at the time the Supreme Court's opinion in *Protz* was filed. (Claimant's Br. at 13-14.) According to Claimant, his is one such extraordinary case "because it involves a seriously[ ]injured worker whose receipt of [WC] benefits separates him from

---

[8] Petitions for allowance of appeal were filed and denied in *White*, *Hutchinson*, and *Weidenhammer*.

[9] In *Riley v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)*, 258 A.3d 595 (Pa. Cmwlth. 2021), the claimant argued that the equitable balancing language in *Dana Holding* should be applied to allow her to file a reinstatement petition based on *Protz* more than three years after her last receipt of indemnity benefits. In rejecting this position, the Court explained the claimant did "not present any standard upon which this Court can apply such 'equitable balancing'" and was "asking this Court to ignore Section 413(a) of the Act, [77 P.S. § 772,] and create a remedy for which there is no statutory basis." *Id.* at 598. On this second point, the Court observed that we had already held that "*Protz* [] was not intended to be given a fully retroactive effect[ ] without regard to the statute of repose in Section 413(a) of the Act[.]" *Riley*, 258 A.3d at 599 (quoting *Weidenhammer*, 232 A.3d at 994) (first alteration added, emphasis omitted). Thus, while *Riley* addressed *Dana Holding*'s statement regarding equitable balancing, it did so in a case where the claimant's entire claim was extinguished by Section 413(a) by the time she sought reinstatement based on *Protz* thereby precluding any relief. That is not the case here, where Claimant filed his Reinstatement Petition under *Protz* while still receiving indemnity benefits, and, therefore, Section 413(a)'s statute of repose is not implicated.

6

poverty" and he "still remain[s] disabled more than 500 weeks after [his] injuries." (*Id.* at 19, 21.) Claimant maintains that when the equitable balancing test is performed, his interests outweigh those of Employer's and full retroactivity of *Protz* is warranted – meaning that his total disability benefits should be reinstated from December 2, 2010, the date of the initial IRE. (*Id.* at 20-21.)

For its part, Employer posits that the Board's Order affirming the use of the date of the Reinstatement Petition, rather than the date of the 2010 Modification, is consistent with the existing law and should be affirmed.

In *Dana Holding*, a WCJ granted the employer's petition to modify the claimant's disability status from total to partial based upon an IRE performed pursuant to former Section 306(a.2). 232 A.3d at 632-33. The claimant appealed to the Board, which stayed the matter, at the employer's request, pending the Supreme Court's disposition of *Protz*. Based upon *Protz*, the Board reversed and reinstated the claimant's total disability status as of the date of the disputed IRE. *Id.* at 633. The employer then filed a petition for review with this Court, which affirmed. We concluded, after review of the factors described in *Blackwell v. State Ethics Commission*, 589 A.2d 1094 (Pa. 1991), that *Protz* "applie[d] at least to **all cases** in which the underlying IRE was **actively being litigated** when the decision was issued," citing "the general rule that appellate courts apply the law in effect at the time of appellate review." *Dana Holding*, 232 A.3d at 633 (emphasis added). The employer sought review by the Supreme Court, arguing this Court erred in applying *Protz* retroactively to reinstate the claimant's benefits to total disability status as of the date of the IRE, not the date *Protz* was decided. The Supreme Court accepted review to consider whether it was error for this Court to apply the *Protz* standard to

a case on appeal at the time *Protz* was issued to reinstate total disability benefits as of the date of the IRE. *Dana Holding*, 232 A.3d at 635.

In affirming this Court, the Supreme Court performed an in-depth examination of *Blackwell* and other judicial decisions from Pennsylvania, other states, and the federal courts, relating to the retroactive versus prospective applicability of court decisions declaring a statutory provision unconstitutional, focusing particularly on cases, like *Dana Holding*, that were on appeal when the relevant court decision was issued. *Dana Holding*, 232 A.3d at 637-45. The Supreme Court noted that "different ranges of policy considerations pertain to vindicating constitutional challenges raised and preserved in continuing litigation[] versus applying new constitutional rulings to cases that have become final." *Id.* at 636.

In its examination of federal case law, the Supreme Court acknowledged the federal courts' change of position on the retroactive application of rulings, shifting from selective retroactivity, which engaged in an equitable balancing of interests, to "adopt[ing] a firm rule requiring retroactive application . . . to cases pending on direct appeal." *Id.* at 638-39 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993); *Griffith v. Kentucky*, 479 U.S. 314, 322-23, 328 (1987)). Our Supreme Court explained that the United States Supreme Court had, ultimately, characterized the equitable balancing standard "relative to cases pending on direct appeal as [being] 'unprincipled and inequitable.'" *Id.* at 639 (quoting *Teague v. Lane*, 489 U.S. 288, 304 (1989)). This shift applied, our Supreme Court explained, only to new federal rules of retroactivity, not new state rules, which could be governed by the states' own terms. *Id.* at 639-40.

In Pennsylvania, determining the retroactivity of new legal rulings has been guided by the Supreme Court's decision in *Blackwell*. In *Blackwell*, our Supreme Court considered whether a prior decision, finding a statutory provision unconstitutional for violating the non-delegation clause, as was done in *Protz*, would be applied retroactively or prospectively. The *Blackwell* Court noted the general rule in Pennsylvania is that courts apply the law in effect at the time of an appellate decision, giving the benefit of a change in law to a party whose case was pending, but there was judicial discretion as to retroactively applying a decision on a case-by-case basis. 589 A.2d at 1098-99. Notwithstanding that it found that a new rule of law had not been declared, the Supreme Court in *Blackwell* examined some factors relevant to applying a judicial decision retroactively, including "the extent of the reliance on the old rule," "weigh[ing] the inequity imposed by retroactive application," and the extent "that persons formerly advantaged by the old rule [would] be unfairly prejudiced by the decision," and concluded that there was "no substantial question that persons formerly advantaged by the old rule [would] be unfairly prejudiced" as there was no old rule upon which anyone relied. *Id.* at 1099-1100 (citing, *e.g.*, *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971), *overruled for purposes of new federal rules in Harper*, 509 U.S. at 97; *Desist v. United States*, 394 U.S. 244, 249 (1969), *overruled for purposes of new federal rules in Griffith*, 479 U.S. at 322-23; *Commonwealth v. Miller*, 417 A.2d 128, 136 (Pa. 1980) (adopting *Desist* standards); *Gibson v. Commonwealth*, 415 A.2d 80, 84 (Pa. 1980) (citing *Chevron*); *Schreiber v. Republic Intermodal Corp.*, 375 A.2d 1285, 1289 (Pa. 1977) (adopting *Chevron* standards)). Accordingly, the *Blackwell* Court applied the general rule of retroactive application to the parties in that matter and to all cases

pending at the time of the decision where the issue had been raised. 589 A.2d at 1101-02.

Following its review of *Blackwell* and the other cases, including many of those cited in *Blackwell*, the Supreme Court in *Dana Holding* concluded:

> Ultimately, we find that the inertia favoring application of the general rule of retroactive application to cases pending on direct appeal should control. Significantly, this case concerns none of the subject areas in which this Court has observed that it has additional latitude to implement a ruling prospectively, *i.e.*, rules of the court's own making, involving procedural matters, or entailing common law development. *See* [*In re*] *L.J.*, . . . , 79 A.3d [1073,] 1087 [(Pa. 2013)]. It does not involve public financing or tax refunds, which places it in contrast with cases such as *Oz Gas* [*Limited v. Warren Area School District*, 938 A.2d 274 (Pa. 2007)]. Although there may be some remaining latitude for a balancing of interests given the longstanding presumptive validity of [former] Section 306(a.2) and employers' and insurers' understandable reliance thereon for many years, we find that [the e]mployer has not shown that its interests are so substantially predominant as to justify a departure from the default approach.

*Dana Holding*, 232 A.3d at 647. Thus, the Court found the subject area involved to be a significant consideration, as in some areas the courts have more latitude with regard to prospective application, such as procedural rules, common law development, and tax refunds. While *Dana Holding* did not involve one of those areas, the Supreme Court mentioned the "longstanding presumptive validity" of the former IRE provision, and the employers' and insurers' reliance thereon. The Supreme Court later explained it was not overruling *Blackwell*, and that,

> [u]ltimately, our present decision stands for the principle that the general rule in Pennsylvania will be that, at least where prior judicial precedent isn't overruled, a holding of this Court that a statute is unconstitutional will generally be applied to cases pending on direct appeal in which the constitutional challenge has been raised and preserved. **At the present point in time, however, the Court is not**

10

**of a mind to exclude the possibility of equitable balancing in extraordinary cases, particularly since no party [in] this appeal has advocated any such position**.

*Id.* at 648-49 (emphasis added). With respect to the Supreme Court's last observation, that no party had advocated the position of excluding the possibility of equitable balancing, the parties' arguments applied the *Blackwell* or *Chevron* criteria requiring the balancing of interests, but did not argue that Pennsylvania should adopt the federal courts' position against selective retroactivity. Having invoked the general rule of retroactive application, the Supreme Court found no error in this Court's determinations that *Protz* applied retroactively and that the claimant's benefits were to be reinstated to total disability as of the date of the IRE. *Id.* at 648.

Claimant relies on the above-emphasized language to argue that the "equitable balancing test" mentioned by the Supreme Court in *Dana Holding* should be applied here. According to Claimant, when that test is performed, and his interests are equitably balanced against those of Employer, this matter constitutes the type of extraordinary circumstances that justify the retroactive application of *Protz* and reinstatement of his total disability status as of the original modification date. We disagree that *Dana Holding* supports the relief Claimant seeks under these circumstances.

This matter does not involve the general rule that was discussed and applied in *Dana Holding*: the retroactive application of *Protz* to all cases pending when *Protz* was decided, in which the issue was raised, resulting in those IREs being invalid from the date they were obtained. Instead, this involves the application of *Protz* to cases, like Claimant's, which were **not** pending on appeal when *Protz* was decided. This Court has held that benefits can be modified as of the date the reinstatement petition was filed, and not as of the date of the IRE. Claimant appears

11

to interpret the Supreme Court's language in *Dana Holding* regarding "equitable balancing in extraordinary cases," 232 A.3d at 649, to mean that this standard is applicable **in all cases** as a type of panacea that could relieve a claimant from the general rule.

Although Claimant posits the Supreme Court fully endorsed an equitable balancing test where extraordinary circumstances can be established, we are not convinced that the Supreme Court's statements reflected more than a restrained recognition of such a test as a possibility, rather than a certitude. *Dana Holding*, 232 A.3d at 647-49 (stating there "**may** be **some** remaining latitude for a balancing of interests" and that it would **not** "**exclude** the **possibility** of equitable balancing," highlighting that "no party [in] th[at] appeal ha[d] advocated" such a position) (emphasis added). However, we need not determine the firmness of the Supreme Court's position as set forth in *Dana Holding* or in the only other case in which it has recently discussed equitable balancing[10] here because reviewing the basic parameters of the Supreme Court's equitable balancing test and Claimant's arguments, he, like the employer in *Dana Holding*, has not shown that his is an extraordinary case in which his "interests are so substantially predominant as to

---

[10] In *General Motors Corporation v. Commonwealth*, 265 A.3d 353, 366 (Pa. 2021) (quoting *Dana Holding*, 232 A.3d at 647-49), the Supreme Court indicated that, in *Dana Holding*, it "expressly acknowledged the 'possibility of equitable balancing in extraordinary cases'" and that "some subject areas may require 'additional latitude to implement a ruling prospectively,'" such as public funding and taxation. However, *General Motors* was a case involving taxation and whether the Supreme Court's decision in *Nextel Communications of the Mid-Atlantic, Inc. v. Department of Revenue*, 171 A.3d 682 (Pa. 2017), should apply retroactively to the pending litigation in *General Motors*. In concluding that *Nextel* would apply retroactively, the Supreme Court applied the specific, longstanding standards applicable in tax cases described in *Oz Gas*, 938 A.2d at 276, 283, and *American Trucking Associations, Inc. v. McNulty*, 596 A.2d 784 (Pa. 1991). As the equitable balancing standards applied in *General Motors* were longstanding and specific to tax cases, it is unclear whether the Supreme Court's reference to *Dana Holding* was confirming an expansion of these equitable balancing principles beyond certain subject areas.

12

justify a departure from the default approach." 232 A.3d at 647. This is a heavy burden as Claimant is seeking to deviate from the settled application of non-retroactivity in an area our Supreme Court recognized does not allow for much judicial latitude. And, in this determination, we are required to consider and balance **both** Claimant's interests and Employer's interests.

In support of his claims that his is an extraordinary case, that a balancing test should apply, and that his interests should prevail, Claimant cites the severity of his injury, which has left him unable to return to work for more than 500 weeks, and his financial need for the continuation of his indemnity benefits as the basis for the "extraordinary" nature of his case. (Claimant's Br. at 19, 21.) He also maintains that he has a vested right to ongoing benefits. Although we acknowledge Claimant's arguments, we are unconvinced that the asserted interests establish an "extraordinary case[]," 232 A.3d at 649, to which the balancing test would alter the Board's result.

While we are sympathetic to the position that Claimant is in, it is no different than that of many other claimants who also face the cessation of their WC indemnity benefits under these or similar circumstances. It may be unfortunate for claimants, but it is not an extraordinary position as it reflects the balancing of interests the General Assembly engaged in when it enacted Act 111. Claimant has not cited any cases where these types of interests render inapplicable a general rule of law, and we are unaware of any such cases. Of note, Claimant benefited from *Protz* in its immediate aftermath in that he was able to seek reinstatement of his total disability benefits due to the unconstitutionality of the IRE system; the harm he alleges is the result the General Assembly's enactment of Act 111, allowing employers credit for the partial disability benefits previously paid, and judicial interpretations of *Protz* in light of that legislation. Thus, Claimant is in a better position than other claimants

13

whose benefits were modified to partial outside the IRE process. There are numerous ways that a claimant may exhaust their 500 weeks of partial disability, and agreeing with Claimant that his is an extraordinary case to which equitable balancing applies because he remains disabled and has a financial need for his indemnity benefits would mean all claimants who face this situation present extraordinary cases. This cannot be the intent or purpose of the equitable balancing test described in *Dana Holding*.

Additionally, Employer's interests must be balanced against Claimant's unfortunate, but not extraordinary, interests. Those interests include reliance not only on the previously presumed valid IRE provisions but also on **the final, unappealed decision on the IRE modifying Claimant's benefits status**. Further, employers may also have forgone other avenues of relief, such as seeking a modification of benefits based on establishing earning power through a vocational interview and the availability of suitable modified-duty work pursuant to Section 306(b)(2) of the Act, 77 P.S. § 512(2), or having claimants attend an independent medical examination to determine if they had fully recovered, knowing that the clock was ticking on a claimant's 500 weeks of partial disability. *Weidenhammer*, 232 A.3d at 994; *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 195 A.3d 635, 641 (Pa. Cmwlth. 2018), *aff'd*, 232 A.3d 629 (Pa. 2019). When this balancing is done, we cannot say that Claimant's "interests are so **substantially predominant** as to justify a departure from the default approach." *Dana Holding*, 232 A.3d at 647 (emphasis added)

Further, to the extent Claimant argues that he had an alleged vested right or entitlement to ongoing benefits to support the extraordinariness of his case or that his interests are "substantially predominant" to Employer's interests, this Court has

rejected arguments that a claimant has a vested right to ongoing benefits indefinitely. We have explained that while a claimant may "retain[] certain right[s] to benefits" under the Act, such rights exist "until such time as [the claimant] is found to be ineligible for [benefits]" under the Act. *Pierson*, 252 A.3d at 1179. "The right to disability compensation for a workplace injury was created by the Act, which has imposed limits and conditions on an injured employee's right to compensation benefits. One such limit is found in Section 413(a) of the Act," which "authorizes a WCJ to modify, reinstate, suspend or terminate compensation 'at any time,'" except in circumstances not applicable here. *Weidenhammer*, 232 A.3d at 993. Accordingly, "there are reasonable expectations under the Act that benefits may change," *Pierson*, 252 A.3d at 1179, and it is not an extraordinary circumstance that a claimant's indemnity benefits may be reduced or end before a claimant believes they should. In this way, it could be said that the General Assembly has already performed the equitable balancing by establishing a means for claimants to obtain indemnity benefits until such time as they are ineligible, whether due to a change in medical condition, earnings capabilities, impairment rating, or an exhaustion of benefits. This very well may be the "grand bargain" of which Claimant speaks in his brief. (Claimant's Br. at 16.) The General Assembly established, via the Act, a system through which injured workers receive immediate benefits for medical treatment and wage loss without consideration of fault and employers receive relief from potential civil liability and the knowledge that the wage loss benefits may not be required to be paid indefinitely if certain facts are established. These considerations militate against finding that Claimant's case is an "extraordinary" one or that his "interests are so substantially predominant as to justify a departure from

15

the default approach" of the application of *Protz* to this case, which was not pending when *Protz* was decided.

For these reasons, the Supreme Court's statements in *Dana Holding* regarding the availability of an equitable balancing test and retroactive application of *Protz* in extraordinary cases does not require us to reverse the Board.

> *B. Whether the Board erred in affirming the modification of Claimant's benefits and granting Employer a credit for its prior partial disability payments pursuant to Act 111.*

Claimant next argues that Act 111 cannot be applied retroactively to claimants who began receiving benefits prior to its enactment and doing so violates Section 1926 of the Statutory Construction Act of 1972[11] and various constitutional provisions that protect claimants' vested rights to open-ended indemnity benefits. (Claimant's Br. at 18, 21, 23-31 (citing PA. CONST. art. I, § 11; 1 Pa.C.S. § 1926; *Gibson v. Commonwealth*, 415 A.2d 80, 83-84 (Pa. 1980); *Rose Corp.*, 238 A.3d at 553; *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Weigand)*, 764 A.2d 663, 668 (Pa. Cmwlth. 2000); *Keystone Coal Mining Corp. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 673 A.2d 418, 421 (Pa. Cmwlth. 1996)).) To the extent *Pierson* and its progeny hold otherwise, Claimant asserts they should be reconsidered as they are inconsistent with the Supreme Court's decision in *Bible v. Department of Labor and Industry*, 696 A.2d 1149 (Pa. 1997), and this Court's decisions in *Rose Corporation*, and, most recently, *Gonzalez v. Guizzetti Farms, Inc. (Workers' Compensation Appeal Board)* (Pa. Cmwlth., Nos. 144, 286 C.D. 2022, filed April 18, 2023).[12]

---

[11] Section 1926 states, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926.

[12] An unreported opinion of this Court, while not precedential, may be cited for its persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1)-(2), **(Footnote continued on next page…)**

16

Employer initially notes that Claimant does not challenge any of the WCJ's findings of fact but asserts he is being unconstitutionally deprived of his disability benefits by the WCJ's decision and Board's Order. (Employer's Br. at 17.) Employer maintains that it met the requirements for obtaining a modification of Claimant's disability benefits based on the December 15, 2020 IRE and a credit for its prior partial disability benefit payments as authorized by Section 306(a.3) of the Act and Section 3 of Act 111, and there is no constitutional infirmity in the WCJ granting that relief. (*Id.* at 16-19.) *Rose Corporation*, Employer asserts, supports the use of an IRE performed after Act 111's effective date to modify benefits and permitting an employer a credit for the partial disability benefits already paid prior to Act 111. (*Id.* at 19.) Employer argues this Court has already considered, and rejected, arguments that applying Act 111 to claimants injured before its effective date violates due process and the Remedies Clause, PA. CONST. art. I, § 11, by interfering with those claimants' vested rights. (*Id.* at 19-20 (citing *Pierson*, 252 A.3d at 1175-76, 1180).) Additional arguments of Act 111's alleged unconstitutionality were rejected, Employer observes, in *Hutchinson*, 260 A.3d at 366-67. (*Id.* at 20.) Thus, Employer contends, the Board did not err in relying on *Rose Corporation*, *Hutchinson*, and *Pierson* to conclude that Act 111 as applied here is constitutional and to affirm the WCJ's decision. (*Id.* at 20-21.)

As with Claimant's argument that *Protz* must be retroactively applied to all claimants, the arguments he maintains against the retroactive application of and unconstitutionality of Act 111 have already been considered and rejected by our

Pa.R.A.P. 126(b)(1)-(2), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). Claimant filed an "Application for Leave to File Post-Submission Communication Pursuant to Pa.R.A.P. 2501," seeking to bring *Gonzalez* to the panel's attention, which we granted by Order dated June 2, 2023.

17

Court.  *See, e.g.*, *Wescoe v. Fedchem, LLC (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1010 C.D. 2021, filed Aug. 16, 2022); *DiPaolo v. UPMC Magee Women's Hosp. (Workers' Comp. Appeal Bd.)*, 278 A.3d 430 (Pa. Cmwlth. 2022), *appeal denied*, 290 A.3d 237 (Pa. 2023); *Sochko v. Nat'l Express Transit Serv. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 490 C.D. 2021, filed Mar. 16, 2022); *Hender-Moody v. Am. Heritage Fed. Credit Union (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 166 C.D. 2021, filed Feb. 15, 2022); *Hutchinson*, 260 A.3d at 366-67; *Pierson*, 252 A.3d at 1178-81.  Although Claimant asserts *Pierson* and its progeny should be reconsidered, we are unpersuaded that reconsideration is warranted, particularly where multiple petitions for allowances of appeal were filed with and denied by our Supreme Court.[13]

Further, although Claimant argues that *Pierson* is inconsistent with *Rose Corporation*, his argument is misplaced.  In *Rose Corporation*, we expressly held that, in contrast to the provision of Act 111 at issue in that matter, the General Assembly **had** included language that expressed its intent that the credit provision be applied retroactively.  238 A.3d at 562 (stating that "[t]hrough the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid" and that the use of this "specific language" reflected the intent that the credit provision was to be given retroactive effect).  Therefore, contrary to Claimant's argument, *Rose Corporation* supports the Board's decision in this matter.

Finally, Claimant's reliance on *Gonzalez* to argue that this Court "appears" to have changed its "analysis of the application of an Act 111 IRE[] to [former Section 306(a.2)] IREs," (Claimant's "Application for Leave to File Post-Submission

---

[13] Petitions for allowance of appeal were filed and denied in *DiPaolo*, *Hutchinson*, and *Pierson*.

18

Communication Pursuant to [Pennsylvania Rule of Appellate Procedure 2501,] Pa.R.A.P. 2501" at 1-2), is similarly misplaced. In *Gonzalez*, the Board upheld a WCJ determination that the employer had essentially waived its right to credit under Section 3(2) of Act 111 because it had not appealed an earlier decision that reinstated the claimant's disability status to total as of the date of the initial IRE, rather than the date of the reinstatement petition, thereby "eras[ing]" the partial disability payments made prior to the decision date. Slip op. at 5, 11. We reversed, holding "that Section 3(2) of Act 111 expressly grants [the e]mployer a credit for previous payments of partial disability" benefits and that such "payments [were] not 'erased[]' . . . or converted to total disability benefits by virtue of the [prior WCJ decision]." *Gonzalez*, slip op. 11-12. Because the WCJ had not made any findings of fact regarding the payments of partial disability, for which the employer was entitled to a credit, we remanded for further record development, findings of fact, and a determination of the employer's entitlement to a credit. *Id.* at 12. We discern nothing in *Gonzalez* that requires a result here different than that in, among others, *Hutchinson* and *Pierson*.

## III. CONCLUSION

Because the Board properly applied the precedent regarding the applicability of *Protz* to cases, where, as here, the request for reinstatement was asserted in a reinstatement petition, and the equitable balancing test referenced in *Dana Holding* would not apply here, there was no error in its upholding the WCJ's decision reinstating Claimant's benefits as of the date of the Reinstatement Petition, rather than the date of the initial IRE. Additionally, because the Board properly applied the precedent regarding Act 111's applicability to claimants whose injuries arose prior to Act 111's enactment and authorization to employers to obtain a credit for

19

past partial disability benefits paid, there was similarly no error in its upholding the WCJ's decision granting Employer a credit for the partial disability benefits it had already paid. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Howard Dunetz,                           :
                    Petitioner           :
                                         :
          v.                             :      No. 302 C.D. 2022
                                         :
Charles H. Sacks D.M.D., P.C.            :
(Workers' Compensation Appeal            :
Board),                                  :
                    Respondent           :

# **O R D E R**

**NOW**, October 26, 2023, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge