[J-20-2024] [MO: Wecht, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| ALCATEL-LUCENT USA INC., | : | No. 8 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 803 FR |
| | : | 2017 dated December 28, 2022, |
| v. | : | sustaining the exceptions filed on |
| | : | October 13, 2021 to the September |
| | : | 13, 2021 Order, Reversing the |
| COMMONWEALTH OF PENNSYLVANIA, | : | decision of the PA Board of Finance |
| | : | and Revenue at No. 1628908 dated |
| Appellant | : | August 23, 2017 and remanding. |
| | : | |
| | : | ARGUED: March 6, 2024 |

## DISSENTING OPINION

**JUSTICE BROBSON**                                        **DECIDED: November 20, 2024**

A legal rule that denies relief to applicants who successfully demonstrate that the Commonwealth violated their constitutional rights to uniform taxation is repugnant to the Pennsylvania Constitution and our system of law. That is precisely the rule that the Majority adopts today. There is no dispute in this case that the flat cap in the 2014 "net loss carryover" (NLC) deduction violates the Uniformity Clause of the Pennsylvania Constitution[1] and that Alcatel-Lucent USA, Inc. (Alcatel) was subject to that unconstitutional taxing scheme. Moreover, Alcatel's challenge to the 2014 NLC deduction was *pending* at the time this Court issued its decision in *Nextel Communications of Mid-Atlantic, Inc. v. Pennsylvania Department of Revenue*, 171 A.3d 682 (Pa. 2017). This material fact distinguishes Alcatel from the taxpayer in *Oz Gas, Ltd. v. Warren Area*

---

[1] Pa. Const. art. VIII, § 1.

*School District*, 938 A.2d 274 (Pa. 2007), on which the Majority relies heavily to deny Alcatel any relief in this case.  Under these circumstances, and unlike the taxpayer in *Oz Gas*, Alcatel is entitled to relief from this Court.  I, therefore, respectfully dissent.

In *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), the United States Supreme Court considered whether its decision in *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), should have retroactive effect.  The *Davis* Court held that "a State violates the constitutional doctrine of intergovernmental tax immunity when it taxes retirement benefits paid by the Federal Government but exempts from taxation all retirement benefits paid by the State or its political subdivisions."  *Harper*, 509 U.S. at 89. The applicants in *Harper* raised the same complaint in Virginia state court, but the Supreme Court of Virginia, applying the retroactive/prospective analysis set forth by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), ultimately concluded that *Davis* should have a strictly prospective application and denied the applicants relief.[2]

Reversing, the United States Supreme Court pronounced that its "application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision."  *Harper*, 509 U.S. at 90.  The Supreme Court explained:

> "[B]oth the common law and our own decisions" have "recognized a general rule of retrospective effect for the constitutional decisions of this Court."  *Robinson v. Neil*, 409 U.S. 505, 507 . . . (1973).  Nothing in the [Federal] Constitution alters the fundamental rule of "retrospective operation" that has governed "[j]udicial decisions . . . for near a thousand years."  *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 . . . (1910) (Holmes, J., dissenting).

---

[2] For a decision to have prospective application, the United States Supreme Court explained in *Chevron* that a court must consider:  (1) whether the decision establishes a new principle of law; (2) "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation;" and (3) equity to the parties in prospective application.  *Chevron*, 404 U.S. at 106-07 (quoting *Linkletter v. Walker*, 381 U.S. 618, 629 (1965), *overruled by Griffith v. Kentucky*, 479 U.S. 314 (1987)). A party does not necessarily have to satisfy all three factors for prospective application.

*Harper*, 509 U.S. at 94 (most alterations in original). The Supreme Court observed that, in *Griffith*, it eliminated limits on retroactivity for constitutional rulings in the criminal context but commented that civil retroactivity was still governed by *Chevron*. The Justices then divided over the application of *Chevron* in the civil context in *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167 (1990) (*Smith*), with four Justices in the dissent advocating against a prospective approach to rulemaking. *See Smith*, 496 U.S. at 212 (Stevens, J., dissenting) ("Fundamental notions of fairness and legal process dictate that the same rules should be applied to all similar cases on direct review;" "'simple justice,' requires that a rule of law, even a 'new' rule, be evenhandedly applied." (quoting *Griffith*, 452 U.S. at 401)).[3]

In *Harper*, the Supreme Court noted that both *Griffith* and *Smith* left the retroactive question unresolved until the Court's plurality decision in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), explaining:

> Although . . . *Beam* . . . did not produce a unified opinion for the Court, a majority of Justices agreed that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law. In announcing the judgment of the Court, Justice [Souter] laid down a rule for determining the retroactive effect of a civil decision: After the case announcing any rule of federal law has "appl[ied] that rule with respect to the litigants" before the court, no court may "refuse to apply [that] rule . . . retroactively." . . . (opinion of [Souter], J., joined by [Stevens], J.). Justice [Souter's] view of retroactivity superseded "any claim based on a *Chevron . . .* analysis." . . . Justice [White] likewise concluded that a decision "extending the benefit of the judgment" to the winning party "is to be applied to other litigants whose cases were not final at the time of the [first] decision." . . . (opinion concurring in judgment). Three other Justices agreed that "our judicial responsibility . . . requir[es] retroactive application of each . . . rule we announce." . . . ([Blackmun], J., joined by Marshall and [Scalia], JJ., concurring in judgment). . . .

---

[3] Justice Scalia concurred in the judgment but "share[d]" the dissent's "perception that prospective decision[-]making is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be." *Smith*, 496 U.S. at 201 (Scalia, J., concurring).

> *Beam* controls this case, and we accordingly adopt a rule that fairly reflects the position of a majority of Justices in *Beam*: When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith*'s ban against "selective application of new rules." . . . Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, . . . we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. *Beam, supra*, 501 U.S.[] at 543, . . . (opinion of [Souter], J.). Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." *American Trucking, supra*, 496 U.S.[] at 214 . . . ([Stevens], J., dissenting).

*Harper*, 509 U.S. at 96-97 (some alterations in original). Based upon this reasoning, the United States Supreme Court in *Harper* (1) concluded that the Supreme Court of Virginia erred in applying *Chevron* to determine the retroactive effect of civil cases and (2) ruled that *Davis* had retroactive application to the parties before the Supreme Court and those cases pending on appeal. As a result, the United States Supreme Court's decision in *Harper* essentially eradicated the application of *Chevron* in civil cases. Instead, it applied the principle of the *Griffith* decision.

Notably, the United States Supreme Court issued *Harper* after *Smith* and *Chevron*, with the dissenting faction in *Smith* finding ground in the *Harper* majority, and multiple states have now adopted the *Harper* rule of retroactivity either in full or to some degree. *See, e.g., Dempsey v. Allstate Ins. Co.*, 104 P.3d 483, 489 (Mont. 2004) (adopting *Harper* but allowing *Chevron* as exception where all three factors are clearly satisfied; "[w]e agree with the *Harper* court that limiting a rule of law to its prospective application creates an arbitrary distinction between litigants based merely on the timing of their claims."); *Beavers v. Johnson Controls World Servs., Inc.*, 881 P.2d 1376, 1381-83 (N.M. 1994)

(adopting "presumption" in favor of retroactivity due to "the desirability of treating similarly situated parties alike"); *State v. Styles*, 693 A.2d 734, 735 (Vt. 1997) (referencing *Harper* to hold that "change in law will be given effect while a case is on direct review, except in extraordinary cases, . . . whether the proceedings are civil or criminal."). Rather than tackle *Harper* head on, the Majority dismisses it out of hand under the sunburst doctrine.[4] Instead, the Majority leans into *American Trucking Associations, Inc. v. McNulty*, 596 A.2d 784 (Pa. 1991) (*McNulty*), and *Oz Gas*, both of which predate *Harper*, and applies the since-rejected *Chevron* test to deny relief to Alcatel. For the reasons set forth below, *Harper* so undermines the federal precedent on which both *McNulty* and *Oz Gas* are based that neither supports the Majority's decision.

We decided *McNulty* on remand from the United States Supreme Court after it concluded that a Pennsylvania highway tax violated the Commerce Clause[5] in *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266 (1987) (*Scheiner*). The Supreme Court remanded for us to determine whether *Scheiner* should apply retroactively to afford the petitioners relief. In the interim, the United States Supreme Court issued its decision in *Smith*, which was a challenge to an Arkansas tax that was similar to the Pennsylvania tax the Supreme Court invalidated in *Scheiner.* As such, the petitioners in *Smith* asked the Supreme Court to apply *Scheiner* retroactively and issue the petitioners refunds for the taxes they paid to Arkansas. The Supreme Court conducted a *Chevron* analysis and refused to apply *Scheiner* retroactively, however, finding that *Scheiner* constituted a new rule of law by overruling prior precedent, retroactive application would not further the purpose of the Commerce Clause or the holding of *Scheiner*, and substantial inequity

---

[4] *See Great N. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932) ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward.").

[5] U.S. Const. art. I, § 8, cl. 3.

would befall the state of Arkansas because issuing refunds could deplete the state treasury.

This Court appropriately held its consideration of *McNulty* pending the outcome of *Smith*, and we proceeded to reach the same conclusion as the United States Supreme Court that *Scheiner* should not apply retroactively under *Chevron*. "[W]eighing . . . the equities . . . , we conclude[d] that pure prospective application of the rule in *Scheiner* from the date of the decision in that case, June 23, 1987, [wa]s appropriate," and we denied "[t]he claims for refunds prior to that date." *McNulty*, 596 A.2d at 790. The taxpayers also argued unsuccessfully in the alternative that they were entitled to a refund on a statutory basis unrelated to *Chevron*. Rejecting that rationale, we reasoned:

> The deficiency in this argument is that it fails to perceive the effect of a declaration that a ruling is to be applied purely prospectively. Under a ruling that *Scheiner* is to be applied prospectively, it is as though the taxes collected prior to the date of the *Scheiner* decision were not unconstitutional. This is the very meaning of prospective application; the holding of unconstitutionality applies from the date of decision, and not before. A decision on the retroactive or prospective effect of *Scheiner* is thus indispensable to determining whether the statutes or the stipulations require that refunds be made. A ruling of pure prospectivity would be a determination that the Commonwealth was "rightfully and equitably entitled" to the taxes paid prior to the date of the Supreme Court's decision in *Scheiner*, precluding a claim for refunds under [the applicable state refund statutes.]

*Id.* at 787 (emphasis omitted)..

*Oz Gas* concerned the retroactive/prospective application of this Court's decision in *Independent Oil and Gas Association v. Board of Assessment Appeals of Fayette County*, 814 A.2d 180 (Pa. 2002) (*IOGA*). In *IOGA*, this Court held that the plain language of Section 201(a) of The General County Assessment Law,[6] 72 P.S. § 5020-201(a), does not authorize the taxation of oil and gas rights in the Commonwealth. Oz Gas paid taxes on its oil and gas interests to Warren Area School District from 1999 to 2002. After this

---

[6] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020-101-602.

Court issued *IOGA*, Oz Gas filed a complaint on May 13, 2003, seeking a refund for the taxes it paid under Section 5566b(a) of what is commonly referred to as the Tax Refund Law or the Refund Act,[7] 72 P.S. § 5566b(a), which permits a refund of taxes where the Commonwealth or a political subdivision causes money to be paid into a treasury that the Commonwealth or a political subdivision is not entitled to receive.

Significantly, *IOGA*, and, therefore, *Oz Gas*, did not involve an unconstitutional tax. In rejecting Oz Gas' refund request by holding that the Court's prior decision in *IOGA* should apply only prospectively, we explained:

> *IOGA* differs from *Scheiner* in that *IOGA* found that the *ad valorem* taxes on oil and gas reserves, at issue in that case, were improper as a matter of statutory construction, and not on constitutional grounds. A reasoned argument could be made (as it was made by the dissenting opinion in *Smith*) that a taxing statute found to be unconstitutional (as in *Scheiner*) should be deemed unconstitutional from its inception because the constitutional provision the statute violated never changed. By contrast, a colorable argument can be made that an interpretation of language in a taxing statute, because it is not grounded in unchanging constitutional provisions, may be said to be effective from the date of the decision announcing the interpretation.
>
> Had this Court found the taxes assessed pursuant to Section 201(a) of the General County Assessment Law to be unconstitutional, *McNulty*, which remains good law, would counsel a conclusion that the decision had only prospective application, even though a statute that fails to pass constitutional muster presumably never was constitutional. In *IOGA*, this Court interpreted Section 201(a) and determined that *ad valorem* taxes could not be assessed against oil and gas reserves that remained underground as a matter of statutory construction. If a finding that the same tax was unconstitutional, meaning that the tax was never validly collected, would be subject to prospective-only application, it would defy logic to hold that *IOGA*'s holding, based in statutory interpretation, must apply retroactively. This is so because the effect of retroactive application remains the same, regardless of the basis for the invalidation of the tax. Accordingly, pursuant to this Court's teaching in *McNulty*, we hold that the *ad valorem* taxes on underground oil and gas reserves are invalid prospectively, *i.e.*, only from the date of the *IOGA* decision and not before.

*Oz Gas*, 938 A.2d at 282-83.

---

[7] Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. §§5566b-5566c.

This Court also conducted a *Chevron* analysis, which we reasoned supported prospective application. Finally, we explained that the *McNulty* prospective approach was "sensible":

> Due to the perhaps-unique effect of holding that a decision regarding a tax statute is retroactive, the approach in *McNulty* (and the *Smith* plurality) is sensible. To avoid the potentially devastating consequences to taxing entities, it is important that taxes collected pursuant to a valid statute remain valid unless and until otherwise determined by this Court. The incentive to challenge still remains for the challenge, if successful, results in relief from the tax going forward. With respect to tax statutes, then, we reaffirm *McNulty* in holding that a decision of this Court invalidating a tax statute takes effect as of the date of the decision and is not to be applied retroactively. Accordingly, *IOGA* does not apply retroactively to invalidate taxes paid by Oz Gas for the three years prior to the issuance of that decision.

*Id*. at 285.

Based on the foregoing, the Majority adopts the *McNulty* rationale that the 2014 NLC deduction was not unconstitutional until our decision in *Nextel* in 2017.[8] Majority Op. at 15-16. But the Majority fails to recognize that *McNulty* is implicitly overruled by *Harper*. Again, *McNulty* involved a tax challenge under the Commerce Clause, and *Harper* made clear that decisions concerning federal constitutional rules must apply retroactively. Indeed, in *Annenberg v. Commonwealth*, 757 A.2d 338 (Pa. 2000), we rejected the prospectivity rationale of *McNulty* because that case involved a Commerce Clause challenge to a county level tax, and we concluded that the tax was

---

[8] For purposes of structuring this dissenting opinion, I have followed the Majority's phraseology of the central question as relating to the retroactivity of *Nextel*, a decision that dealt only with a discrete and specific statutory tax scheme for the 2007 tax year. I agree with Justice Mundy, however, that this Court's decision in *Nextel* provides only the reasoning and rationale supporting the determination that the discrete statutory tax scheme at issue in this matter for the 2014 tax year falls for the same reasons set forth in *Nextel*. (Mundy, J., concurring at 1.) The more precise way to phrase the question before the Court now is whether the Court's decision *in this matter* should be applied retroactively to allow a refund to Alcatel for the corporate net income tax it paid and that the Commonwealth collected in 2014.

unconstitutional under the Commerce Clause based on the United States Supreme Court's decision in *Fulton Corp. v. Faulkner*, 516 U.S. 325 (1996). We were bound, therefore, by *Harper* to apply *Fulton* retroactively and afford the challengers a tax refund. *Annenberg*, 757 A.2d at 350-51. *Harper* and *Annenberg*, therefore, clarify that *McNulty* lacks any precedential value.

Further, in his concurring opinion in *Smith*, Justice Scalia persuasively explains why *McNulty*'s reasoning is flawed:

> The very framing of the issue that we purport to decide today—whether our decision in *Scheiner* shall "apply" retroactively—presupposes a view of our decisions as creating the law, as opposed to declaring what the law already is. Such a view is contrary to that understanding of "the judicial Power," U.S. Const., Art. III, § 1, which is not only the common and traditional one, but which is the only one that can justify courts in denying force and effect to the unconstitutional enactments of duly elected legislatures, *see Marbury v. Madison*, 1 Cranch 137 (1803)—the very exercise of judicial power asserted in *Scheiner*. To hold a governmental Act to be unconstitutional is not to announce that we forbid it, but that the Constitution forbids it; and when, as in this case, the constitutionality of a state statute is placed in issue, the question is not whether some decision of ours "applies" in the way that a law applies; the question is whether the Constitution, as interpreted in that decision, invalidates the statute. Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense. Either enforcement of the statute at issue in *Scheiner* (which occurred before our decision there) was unconstitutional, or it was not; if it was, then so is enforcement of all identical statutes in other States, whether occurring before or after our decision; and if it was not, then *Scheiner* was wrong, and the issue of whether to "apply" that decision needs no further attention.

*Smith*, 496 U.S. at 201 (Scalia, J., concurring) (emphasis omitted). Justice Stevens, dissenting in *Smith*, is likewise compelling on this point:

> Our judgment in *Scheiner* leaves no doubt that the Arkansas [Highway Use Equalization (HUE)] tax is unconstitutional. As Justice [Blackmun] concluded, in ruling on petitioners' application for establishment of an escrow account, the taxes challenged by petitioners are "substantially similar" in effect "to that of the Pennsylvania unapportioned flat taxes invalidated in *Scheiner*," and work "to deter interstate commerce." The

State Supreme Court held, and the plurality today acknowledges, that the Arkansas HUE tax, like the Pennsylvania flat taxes, violates the command of the Commerce Clause by exerting a pressure on interstate businesses to ply their trade within state boundaries.

In my opinion, the Arkansas HUE tax also violated the Constitution before our decision in *Scheiner* and petitioners are entitled to a decision to that effect. Like the taxpayers in *Scheiner* itself, petitioners timely challenged the constitutionality of the state flat tax. Petitioners would have prevailed if the Pennsylvania tax invalidated in the *Scheiner* case had never been enacted, or if that litigation had not reached our Court until after their litigation did. They should not lose simply because we decided *Scheiner* first. In *Scheiner*, we applied our understanding of the Commerce Clause retroactively, reversing the Pennsylvania Supreme Court's judgment that a similar flat highway tax was unconstitutional and remanding the case for further consideration of the remedial issues. We should follow the same course here. The accidental timing of our decisions in two timely filed and currently pending cases should not, and has not in the past, produced such a difference in the law applicable to the respective litigants.

*Smith*, 496 U.S. at 211-12 (Stevens, J., dissenting) (citations omitted).

As explained above, even Justice Castille, in his majority opinion in *Oz Gas*, found merit to this notion: "A reasoned argument could be made . . . that a taxing statute found to be unconstitutional (as in *Scheiner*) should be deemed unconstitutional from its inception because the constitutional provision the statute violated never changed." *Oz Gas*, 938 A.2d at 282-83 ("[A] statute that fails to pass constitutional muster presumably never was constitutional."). Clearly, to say that the 2014 NLC deduction was constitutional in 2014 at the time Alcatel paid its tax is to perpetrate a fiction.

In addition, *Oz Gas* can be harmonized with the rule set forth in *Harper* because Oz Gas' claim for a refund was not *pending* at the time *IOGA* was decided. Rather, the applicant, after learning of our *IOGA* decision, filed a claim for a refund roughly 5 months after the decision was issued. This Court rightfully rejected that claim based on "the potentially devastating repercussion of having to refund taxes paid, budgeted and spent by the entities." *Oz Gas*, 938 A.2d at 285. I do not advocate for allowing new claims to be filed after a tax decision is rendered so that new challengers can benefit from the

acumen of pending challengers that sought to vindicate their constitutional rights in court. To open the floodgates to all new challengers could, as the Majority suggests, bankrupt the state. The pending claims were also public knowledge and new challengers had the ability to learn of such challenges and file claims if they desired relief. On these bases, the *Oz Gas* decision to deny relief to a taxpayer who did not have a claim pending at the time *IOGA* was decided remains good law and is entirely consistent with how I would dispose of this matter. To deny relief entirely to other challengers with pending claims simply because another challenger's claim is resolved first, however, is, as Justice Stevens explained in his dissenting opinion in *Smith*, nonsensical and inequitable.

Further, in *Nextel*, we discussed how a failure to provide a taxpayer with a remedy would not "chill the bringing of future such actions to contest the constitutionality of taxing statutes" because we reasoned that "there is always an incentive, in the avoidance of liability for payment of taxes or fees in the future, to challenge the validity of a statute." *Nextel*, 171 A.3d at 705 (quoting *Oz Gas*, 938 A.2d at 284). As Justice Wecht recognized in his dissenting opinion in *General Motors Corp. v. Commonwealth*, 265 A.3d 353 (Pa. 2021), however, that is not the case here because the 2014 NLC deduction was only applicable for the 2014 tax year. *General Motors*, 265 A.3d at 382 (Wecht, J., dissenting). Nor does our law clearly entitle a challenger to an injunction against a tax prior to paying, as Justice Wecht also suggested in his dissenting opinion in *General Motors*, or some type of pre-payment determination of constitutionality, as suggested by the Majority. (Maj. Op. at 17 & n.63.) By contrast, the law provides an express statutory remedy to file a claim for a refund *after* the taxpayer remits the funds. *See* 72 P.S. § 5566b(a). What incentive, then, does a challenger have to bring a constitutional challenge to a tax scheme when this Court refuses to provide that challenger with relief under the prescribed statutory procedure to obtain a refund established by our General Assembly?

To deny relief under such circumstances may also violate the remedies clause of the Pennsylvania Constitution, which provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11; *Singer v. Sheppard*, 346 A.2d 897, 903 (Pa. 1975) ("Article I, Section 11, can be invoked . . . with respect to a legal injury."). Again, the parties do not dispute that the 2014 NLC deduction scheme is unconstitutional, Alcatel was subject to that scheme, and Alcatel's claim was pending at the time *Nextel* was decided. Yet, under the Majority's disposition, Alcatel receives neither retroactive, prospective, nor present relief despite having succeeded in court. That result would seem contrary to the mandate of Article I, Section 11 that the courts are open and must provide a remedy for an injury.

To the extent *Oz Gas*, despite the demise of the federal precedent that underlies its reasoning, has any air left in the tank, it stands only for the proposition that a taxpayer cannot seek a refund *after* a court decision invalidating a tax. It says nothing about claims pending at the time the court makes that decision. Consistent with this limiting principle, and more recent precedent on the prospective/retroactive subject, Alcatel is entitled to relief for the constitutional harm that it suffered, as are any other taxpayers with similar and pending refund claims relating to the 2014 NLC cap. This approach avoids the extreme alternatives on both sides—(1) open the floodgates for more refund claims after the Court issues its decision in this case, or (2) provide no remedy at all to anyone. The first, I acknowledge, could cause great strain to our Commonwealth's coffers. The second, however, causes great strain to our constitution and the willingness of our courts to right the wrongs of government. Both, in my view, are unpalatable.

Parenthetically, I note that issuing a refund to a successful challenger is not the only remedy discussed by the United States Supreme Court in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18 (1990). The Supreme Court also indicated that a charge against entities that failed to pay a correct amount would be permissible under the Due Process Clause of the United States Constitution[9] or "any form of relief" a state fashions that meets minimum due process standards. *Id.* at 51. The Majority, however, sees only one remedy possible—full and immediate retroactive refund, predicting dire financial repercussions that would befall the budgets of state and local government agencies if a court were to impose such a remedy. Unlike the Majority, I am open to the possibility that a court could fashion another form of relief—*i.e.*, partial refunds, credits, etc.—that would remedy the constitutional wrong and temper the impact on government budgets if an immediate, full refund would be harmful to the Commonwealth.

For all these reasons, I would adopt the rule set forth in *Harper* that challengers with claims pending on direct review are entitled to the benefit of a change in the law and award Alcatel relief. Thus, I respectfully dissent.

---

[9] Of course, I am not suggesting this is a perfect or even palatable remedy, as I discussed in *Nextel Communications of Mid-Atlantic, Inc., v. Commonwealth*, 129 A.3d 1 (Pa. Cmwlth. 2015), which this Court reversed in its *Nextel* decision. *See Nextel*, 129 A.3d at 13 ("[W]e fully recognize that our decision in this case could be far-reaching. Nonetheless, our analysis and remedy is appropriately confined to the Commonwealth, Nextel, and the 2007 Tax Year. To the extent our decision in this as-applied challenge calls into question the validity of the NLC deduction provision in any other or even every other context, the General Assembly should be guided accordingly.").